MARTHA SUMMERS *et al.*

*v.*

HARRIET J. HIGLEY.

*Opinion filed June 19, 1901.*

1. WILLS—*provisions of will construed.* A will devising to the testator's wife all of his estate, "to be used by her for her own support and for the maintenance and education of my children," with discretion, as executrix, to bestow sums of money upon the testator's father if he became infirm and dependent, does not pass a fee simple title to the wife but creates a trust, which is not defeated by the fact that the wife is a beneficiary as well as trustee.

2. TRUSTS—*when trustee has no authority to mortgage.* A trustee having the power to *use* the property for her own support and the maintenance and education of the testator's children and the support of his father if he becomes dependent, but having no power conferred by the will to sell or convey, has no authority to mortgage the property to raise money to establish or maintain her second husband in business.

3. SAME—*when fee in trust property descends as intestate property.* Where the contingency upon which the fee of trust property should vest in the testator's children never happens and there is no other disposition of the fee provided for in the will, it descends to the testator's heirs-at-law as intestate property when the purposes of the trust have been fulfilled.

WRIT OF ERROR to the Circuit Court of Ogle county; the Hon. JAMES S. BAUME, Judge, presiding.

In January, 1868, James M. Summers died testate in Ogle county, leaving his widow, Anna M. Summers, and four children, Martha Summers, Laura A. Summers, Edward Summers and William Summers. His will was admitted to probate on the 18th day of February, 1868, and was as follows:

"*In the name of God, Amen.*—I, James M. Summers, of the town of Polo, in the county of Ogle and State of Illinois, of the age of thirty-five years, and being of sound mind and memory, do make, publish and declare this my last will and testament in manner following, that is to say:

"*First*—I give and bequeath to my beloved wife, Anna M. Summers, all my estate, whether real, personal or mixed, to be used by her for her own support and for the maintenance and education of my children as herein named, to-wit, Laura A. Summers, Edward Summers, Martha A. Summers and William Summers.

"*Second*—It is my will that my wife, who is hereby constituted my executrix, shall, in her discretion, bestow such sums of money on my father, from time to time, Thomas J. Summers, in case of his becoming so infirm by age or disease that he shall be unable to support himself.

"*Third*—It is my will that in case of the death of my wife before any of my children above named attain their majority, that whatever of my estate may be left when the youngest child, William Summers, shall have arrived at the age of twenty-one years, and over and above the education and maintenance of my said children, shall be divided equally among them, share and share alike: *Provided, always,* that my said executrix, or a guardian to said children who may hereafter be chosen or appointed, shall have the power to pay to such one as they become of age, such sums as in their discretion my estate shall then enable them to pay.

"*Fourth*—I hereby appoint my said wife, Anna M. Summers, sole executrix of this may last will and testament, hereby revoking all former wills made.

"In witness whereof I have hereunto set my hand and seal this 24th day of December, A. D. 1867. And I also further will that my said executrix need not give bond for the execution of this my last will and testament."

The widow qualified and has been acting as such executrix ever since.

The testator, at the time of his death, owned, in addition to certain personal property, five lots in Polo, in said county, two of which are in controversy in this case. In 1872 the widow married Martin Grim, who was carrying on the business of a merchant tailor. In 1874, needing

money in said business, he procured a loan of $650 from the defendant in error, Harriet J. Higley, and with his wife, Anna M., executed and delivered to said Harriet a promissory note for that amount, payable two years after its date, with interest at the rate of ten per cent per annum. To secure the payment of this note said Anna M. Grim, and he, as her husband, gave a mortgage on said two lots,—that is, lots 10 and 11, in block 1, in Waterbury's addition to the town of Polo. The money was not procured or used for any purpose mentioned in the will, but only for the use of Martin Grim in his business. The note not having been paid, the defendant in error, on March 20, 1882, filed her bill of complaint in the Ogle circuit court to foreclose the same. Anna M. and Martin Grim, her husband, and the above named Martha A. Summers, were made defendants. Said Anna M. Grim and said Martha A. Summers answered the bill, admitting the mortgage but denying that it became or was a lien upon the property therein described. Said Martha A. Summers also filed a cross-bill, setting up the will and alleging that her mother, said Anna M., had no legal authority to make said mortgage, and that the same was a cloud on the title of herself and her brothers and sisters to said lots. Issues were made on the bill and cross-bill. The cause was continued many years, until the youngest child reached his majority. The court, on the hearing at the April term, 1900, found there was due on the note $1755, and that the complainant was entitled to foreclosure, and dismissed the cross-bill and entered a decree of foreclosure and sale as prayed. The said Martha A. Summers and Anna M. Grim then sued out this writ of error to reverse the decree.

FRANCIS BACON, and FRED ZICK, for plaintiffs in error.

J. C. SEYSTER, and JAMES W. ALLABEN, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

By the decree construing the will the chancellor held that "the said Anna M. Grim, upon the death of said James M. Summers, became vested of the title in fee simple in said lands, subject to the conditional limitations that in case of her death before any of the testator's children had attained their majority, then such fee simple would be cut down to a life estate, and the remainder, at her death, would vest in said children," but held also "that all of said children having attained their majority in the lifetime of said Anna M. Grim, the said Anna M. Grim, by virtue of said will, became vested and is now vested with the fee simple absolute in said land, subject to said mortgage." If this is the proper construction of the will, the plaintiff in error Martha A. Summers had no interest in the property and cannot be heard to question the correctness of the decree foreclosing the mortgage. But we cannot so construe the will. It is clear to our minds that by the first provision of the will, which devises the property to the widow, the testator intended to devise, and did devise, the property to her in trust for certain specified uses,—that is, for her own support and for the maintenance and education of their children named in the will. The fact that she is beneficiary as well as trustee does not defeat the trust. (1 Perry on Trusts, sec. 59.) The property is given to her *to be used by her* for those purposes. It seems to us the language is as plain as it would have been had it stated in express terms that the property was given to her in trust, and then had stated the uses to which it was to be devoted.

Section 13 of the act concerning conveyances (Hurd's Stat. 1899, p. 405,) provides that "every estate in lands which shall be granted, conveyed or devised, although other words heretofore necessary to transfer an estate of inheritance be not added, shall be deemed a fee simple estate of inheritance, if a less estate be not limited by

express words, or do not appear to have been granted, conveyed or devised by construction or operation of law." While the provisions of the will do not contain any words of inheritance, still said Anna would, under the statute, have taken an estate in fee simple absolute in the property afterward mortgaged by her, if it did not appear by the will that a less estate had been devised to her. But it does appear that the property was devised to her upon certain trusts which are declared in the instrument. This is made clearer by the third paragraph of the will, which provides that in case of her death before any one of the children reaches his or her majority, whatever of the estate may remain when the youngest child, William Summers, shall reach twenty-one years of age, over and above the amount consumed in the maintenance and education of said children, is to be equally divided between them. Although the trustee might be dead, the trust would continue until the youngest child should reach his majority, and until that time he would have a beneficial interest in it for his maintenance and education. The will also provided that the property might be further diminished by payments out of it, to each child as he or she became of age, of such sums as the amount of the estate would, in the discretion of the one then appointed to execute the trust, enable him to make. But this makes it clearer that the testator intended that eventually the property should go to his children.

We are of the opinion, also, that a trust is declared by the second paragraph in favor of Thomas J. Summers, the father of the testator. By this provision the testator declares, in effect, that it is his will that his wife shall bestow upon his father, from time to time, in case of his becoming so infirm by age or disease as to be unable to support himself, such sums of money as in her discretion she shall deem necessary for his support.

Such are the trusts declared by the will, and the property is to be used to carry them into effect. It is to be

noted that no power of sale is given to the trustee nor power to mortgage the property for any purpose, and while, if it became necessary, in carrying out the provisions of the will, to sell the real estate, a court of equity would have the power to authorize the trustee to sell and convey the fee, we are of the opinion the will conferred no power on the trustee to sell or to convey, by deed or mortgage. She was authorized *to use* the property for the purposes mentioned,—not to sell or mortgage it. She could reside upon it with her children, or rent it, or make any proper use of it. To mortgage it to raise money to establish or maintain her husband, Grim, in business, was wholly unauthorized, and the mortgage was without force, and should have been so declared.

The contingency upon which the property was to be equally divided among the children when the youngest child should reach his majority, as provided in the third clause, never happened and cannot happen hereafter, inasmuch as that period has passed and the said Anna M. Grim is still alive. There is no other provision in the will disposing of the property, or what may be left of it after the termination of the trust. The fee not having been devised except for the purposes of the trust, we are of the opinion that it descended to the testator's heirs-at-law as intestate estate, subject to the trust, in the same manner it would have done had there been no will, and said James M. Summers had by deed conveyed the property to his wife in trust for the same uses. It is probable, from the terms of the will, that the testator believed that the complete execution and satisfaction of the trusts created would consume the estate. But be that as it may, it remains true that the fee was not otherwise devised than in trust for the uses mentioned.

. It follows that Anna M. Grim had no title which she could convey, by mortgage or otherwise, for the benefit of her husband, Martin Grim, and that the court below erred in decreeing a foreclosure of the mortgage. The

bill to foreclose should have been dismissed, and no reason appears from the record why the cross-bill to remove the mortgage as a cloud upon the cross-complainant's title should not have been sustained.

The decree is reversed and the cause is remanded for further proceedings in accordance with the views here expressed.    *Reversed and remanded.*