# Illinois Official Reports

## Appellate Court

---

### *Chicago Police Sergeants' Ass'n v. Pallohusky*, 2017 IL App (1st) 162822

---

| | |
|---|---|
| Appellate Court Caption | CHICAGO POLICE SERGEANTS' ASSOCIATION, POLICEMEN'S BENEVOLENT & PROTECTIVE ASSOCIATION, UNIT 156A, Plaintiff-Appellee, v. JOHN PALLOHUSKY, Defendant-Appellant (Policemen's Annuity and Benefit Fund, Third-Party Respondent). |
| District & No. | First District, First Division<br>Docket No. 1-16-2822 |
| Filed | September 11, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-L-7546; the Hon. Alexander P. White, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Law Offices of John F. Stimson, Ltd., of Skokie (John F. Stimson, of counsel), for appellant.<br><br>Johnson Legal Group, LLC (Cindy M. Johnson, of counsel), and the Law Offices of Ira N. Helfgot (Ira N. Helfgot, of counsel), both of Chicago, for appellee. |

JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Connors and Harris concurred in the judgment and opinion.


**OPINION**

¶ 1       Defendant, John Pallohusky, appeals from a turnover order entered in supplementary collection proceedings. The circuit court concluded that monthly payments Mr. Pallohusky receives as a "widow's annuity" under his deceased wife's pension plan are not statutorily exempt from collection and must be paid to his judgment creditor. For the reasons that follow, we disagree and reverse the judgment of the circuit court.

¶ 2                                   BACKGROUND

¶ 3       The Policemen's Annuity and Benefit Fund (Fund) was created and is maintained under article 5 of the Illinois Pension Code (Pension Code) "for the benefit of *** policemen, their widows and children." 40 ILCS 5/5-101 (West 2014). Article 5 establishes a "[w]idow's [a]nnuity" for the surviving spouses of police officers who retire or die while in service. 40 ILCS 5/5-134 (West 2014). To fund the annuity, officers are required to contribute a percentage of their salary each pay period, to which the city adds a percentage contribution, plus interest. 40 ILCS 5/5-170, 175.1 (West 2014).

¶ 4       John Pallohusky and his late wife, Mary O'Toole, were both Chicago police officers. From 1991 until her death in 2010, Ms. O'Toole made regular pension contributions. As Ms. O'Toole's surviving spouse, Mr. Pallohusky receives a widow's annuity of $1829.10 per month, which, reduced by federal income taxes and the cost of his monthly health insurance premium, results in monthly payments to him of $782.13. By statute, this benefit is non-transferrable. 40 ILCS 5/5-218 (West 2014). It can only be paid monthly, can never be withdrawn in a lump sum, and expires on Mr. Pallohusky's death. 40 ILCS 5/5-121 (West 2014).

¶ 5       On July 30, 2013, the Chicago Police Sergeants' Association, Policemen's Benevolent & Protective Association, Unit 156A (Association), obtained a judgment in its favor against Mr. Pallohusky in the amount of $690,215.17.[1] Seeking to collect on the judgment, the Association served a third-party citation to discover assets or income belonging to Mr. Pallohusky on the Fund in late 2015. In response, the Fund's lawyer disclosed both the monthly widow's annuity payments received by Mr. Pallohusky and an additional $153,762.90 of Mr. Pallohusky's own pension contributions that were held by the Fund. The Fund asserted that both categories of funds were exempt from collection pursuant to section 5-218 of the Pension Code (40 ILCS 5/5-218 (West 2014)). The Association then filed a motion for turnover, arguing that, under section 12-1006 of the Code of Civil Procedure (735

---

[1]In its briefs the Association provides this court with many details concerning the conduct by Mr. Pallohusky that resulted in that judgment, the parties' contentious litigation history, and related criminal proceedings against Mr. Pallohusky. The Association also argues at length why we may take judicial notice of certain related facts outside of the record on appeal. These facts are omitted here in their entirety, as they have no bearing on the purely legal question before us: whether certain assets are statutorily exempt from collection by a judgment creditor.

ILCS 5/12-1006 (West 2014)), the benefits Mr. Pallohusky received from the Fund as Ms. O'Toole's surviving spouse were not exempt from collection because they were not "retirement funds paid under a retirement plan." In support of its motion, the Association urged the court to apply the reasoning in *Clark v. Rameker*, 573 U.S. ___, 134 S. Ct. 2242 (2014), and *In re Marriage of Branit*, 2015 IL App (1st) 141297, cases holding that the characteristics of inherited individual retirement accounts (IRAs) make them nonexempt assets. In its motion, the Association did not seek turnover of Mr. Pallohusky's individual pension contributions.

¶ 6    On February 17, 2016, the circuit court granted the Association's motion. Agreeing that *Clark* and *Branit* applied, the court concluded that "Mr. Pallohusky's benefit payments from his deceased wife's pension d[id] not fall within the purview of § 12-1006 and [we]re therefore not exempt from collection" because, as with an inherited IRA, "certain significant attributes" of the benefits changed upon the original holder's death. Although Mr. Pallohusky could not withdraw the funds in a lump sum like the holder of an inherited IRA, the court noted that he also could not contribute additional funds to the account and was required to withdraw money from the account "no matter how many years away from retirement he m[ight] be." The court explained that, in its view:

> "The pension payments at issue here changed from being part of a retirement plan to a discretionary fund upon the death of [Ms.] O'Toole. [Mr.] Pallohusky is not precluded from using these funds to supplement his current lifestyle, and they therefore do not constitute 'retirement funds' for the purpose of the Illinois exemption statute."

¶ 7    On October 5, 2016, the circuit court denied Mr. Pallohusky's motion to vacate or reconsider that ruling. This appeal followed.

¶ 8                                    ANALYSIS
¶ 9                            A. Appellate Jurisdiction
¶ 10    We first address the parties' dispute over this court's jurisdiction. Mr. Pallohusky contends that the circuit court's orders of February 17, 2016, and October 5, 2016, are final and appealable "because there are no further proceedings in the Circuit Court that could result in [their] vacatur or reversal." However, the Association insists that the orders are not final—and that this appeal must be dismissed—because the third-party citation to discover assets served on the Fund remains pending. According to the Association, the circuit court's turnover order will only become final when the citation "is concluded"—*i.e.*, is formally dismissed by order of court. On February 1, 2017, we denied the Association's motion to dismiss the appeal on this basis. While we agree with the Association that we are free to reexamine the issue of our jurisdiction (see *National Life Real Estate Holdings, LLC v. International Bank of Chicago*, 2016 IL App (1st) 151446, ¶¶ 9-10 (noting that this court has an independent duty to consider its jurisdictional authority, even where a motion to dismiss for lack of jurisdiction has already been denied)), we agree with Mr. Pallohusky that the circuit court's turnover order is final and appealable.

¶ 11    As a general matter, only final orders are reviewable on appeal. *Niccum v. Botti, Marinaccio, DeSalvo & Tameling, Ltd.*, 182 Ill. 2d 6, 7 (1998). Final orders that dispose of fewer than all of the claims or parties in a case may be appealed pursuant to Illinois Supreme Court Rule 304(a) if they include an express finding that there is no just reason to delay enforcement or appeal. Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010). However, under Rule 304(b), certain types of final orders are immediately appealable even without such a finding, including

"[a] final judgment or order entered in a proceeding under section 2-1402 of the Code of Civil Procedure [(735 ILCS 5/2-1402 (West 2014))]." Ill. S. Ct. R. 304(b)(4) (eff. Feb. 26, 2010).

¶ 12 Supplementary proceedings under section 2-1402 are used to enforce a judgment and are commenced when a judgment creditor serves a citation to discover assets on either a judgment debtor or a third party believed to possess assets belonging to the judgment debtor. Ill. S. Ct. R. 277(a), (b) (eff. Jan. 4, 2013). A supplementary proceeding under section 2-1402 is meant to be "expeditious and efficient" (*Wells Fargo Bank Minnesota, NA v. Envirobusiness, Inc.*, 2014 IL App (1st) 133575, ¶ 13), and will terminate automatically six months from the respondent's first personal appearance unless, as it did in this case, the circuit court enters an order extending that period (Ill. S. Ct. R. 277(f) (eff. Jan. 4, 2013)). A supplementary proceeding not automatically terminated "continues until terminated by motion of the judgment creditor, order of the court, or satisfaction of the judgment." *Id.*

¶ 13 We have consistently recognized in section 2-1402 proceedings that an order is final and appealable " ' "when the citation petitioner is in a position to collect against the judgment debtor or a third party, or the citation petitioner has been ultimately foreclosed from doing so." ' " *PNC Bank, N.A. v. Hoffmann*, 2015 IL App (2d) 141172, ¶ 24 (quoting *Inland Commercial Property Management, Inc. v. HOB I Holding Corp.*, 2015 IL App (1st) 141051, ¶ 26, quoting *D'Agostino v. Lynch*, 382 Ill. App. 3d 639, 642 (2008)).

¶ 14 Consistent with this rule, we have repeatedly exercised appellate jurisdiction to review circuit court orders requiring the payment or liquidation of assets to satisfy a judgment. See, *e.g.*, *In re Estate of Yucis*, 382 Ill. App. 3d 1062, 1069-70 (2008) (orders directing third parties to liquidate a judgment debtor's property to satisfy a judgment were "automatically appealable" under Rule 304(b)(4)); *Levaccare v. Levaccare*, 376 Ill. App. 3d 503, 506, 510-11 (2007) (such orders "became final and appealable upon their entry"); *Bianchi v. Savino Del Bene International Freight Forwarders, Inc.*, 329 Ill. App. 3d 908, 917 (2002) ("an order requiring a judgment debtor to pay a judgment is a final and appealable order"); *Auto Owners Insurance v. Berkshire*, 225 Ill. App. 3d 695, 696, 701 (1992) (order requiring a third-party bank to turn over funds in a judgment debtor's checking account in partial satisfaction of a judgment was appealable under Rule 304(b)(4)); *Illinois Brewing & Malting Co. v. Ilmberger*, 155 Ill. App. 417, 418 (1910) (order under an earlier statutory provision governing supplementary collection proceedings was "an absolute order for the payment of money," and was thus "clearly a final order").

¶ 15 As the Association points out, we recently held in *National Life*, 2016 IL App (1st) 151446, ¶ 16, that an order in a section 2-1402 proceeding concluding that certain loan proceeds were *not* assets of the judgment debtor and therefore not subject to a citation lien was *not* a final and appealable order. Because the order in that case—unlike the turnover order in this case—did not put the petitioner "in a position to collect against the judgment debtor" (*D'Agostino*, 382 Ill. App. 3d at 642), the petitioner needed to demonstrate that it instead "ha[d] been ultimately foreclosed from doing so" (*id.*), something it could not do while its citation was still pending and the supplemental proceeding against the third-party respondent was ongoing. *National Life*, 2016 IL App (1st) 151446, ¶ 15. Thus, we held in *National Life* that the appellant needed a finding under Rule 304(a) (eff. Feb. 26, 2010) that there was no just reason to delay enforcement or appeal. *National Life*, 2016 IL App (1st) 151446, ¶¶ 11, 16.

¶ 16 Here, the payments from Mr. Pallohusky's widow's annuity were the only assets the Association sought in its motion for turnover, and the circuit court granted that motion in its

entirety. The Association argues that it could, in theory, identify and seek to recover other assets of Mr. Pallohusky's from the Fund as a citation respondent. While this may be true—and may also have been true in the cases cited above—as *D'Agostino* and the cases following it make clear, once the citation petitioner is put in a position to collect assets, the court order that put the petitioner in that position is final and appealable. The turnover order Mr. Pallohusky appeals from requires the payment of specific assets to a judgment creditor and puts the Association in a position to collect against a third party. This makes it a final order under *D'Agostino*.

¶ 17    Because we are satisfied that the circuit court's turnover order is a final and appealable order under Rule 304(b)(4), we turn to the merits of the appeal.

¶ 18                    B. Whether the Widow's Annuity Is Exempt From Collection

¶ 19    Mr. Pallohusky contends that the monthly widow's annuity he receives from the Fund is exempt from collection under both section 5-218 of the Pension Code (40 ILCS 5/5-218 (West 2014)) and section 12-1006 of the Code of Civil Procedure (735 ILCS 5/12-1006(a) (West 2014)). He argues that this direct spousal benefit is distinguishable from the inherited IRAs held to be nonexempt assets in *Clark*, 573 U.S. at ___, 134 S. Ct. at 2246-47, and *Branit*, 2015 IL App (1st) 141297, ¶ 26. In response, the Association insists that *Clark* and *Branit* are controlling and that, pursuant to these cases, the annuity does not qualify as an exempt retirement benefit because it can be used for purposes other than Mr. Pallohusky's retirement.

¶ 20    The issue presented is one of statutory construction, which we review *de novo*. *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254 (1995). "The cardinal rule of statutory construction is to ascertain the intent of the legislature." *Toner v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 259 Ill. App. 3d 67, 70 (1994). We look to "the language of the statute itself as the best indication of the intent of the drafters." *Id.*

¶ 21    It is quite clear that Mr. Pallohusky's widow's annuity is exempt from collection under section 5-218 of the Pension Code. That section broadly exempts *any* benefit granted under article 5 of the Pension Code from collection, stating:

"§ 5-218. Annuities, etc.—Exempt. *All pensions, annuities, refunds or disability benefits granted under this Article*, and every portion thereof, *are exempt* from attachment or garnishment process and shall not be seized, taken, subjected to, detained or levied upon by virtue of any judgment, or any process or proceeding whatsoever issued out of or by any court for the payment and satisfaction in whole or in part of any debt, damage, claim, demand, or judgment against a pensioner, annuitant, refund applicant or other beneficiary hereunder." (Emphases added.) 40 ILCS 5/5-218 (West 2014).

And the widow's annuity Mr. Pallohusky receives is plainly a benefit granted under article 5 of the Pension Code. 40 ILCS 5/5-134 (West 2014) (" '[w]idow's [a]nnuity' shall be provided for the widows of policemen").

¶ 22    The language of section 12-1006 is equally clear—a debtor's interest in an annuity under a public employee pension plan "is exempt from judgment." 735 ILCS 5/12-1006(a), (b)(4) (West 2014). That section provides:

"(a) A debtor's interest in or right, whether vested or not, to the assets held in or to receive pensions, annuities, benefits, distributions, refunds of contributions, or other

payments under a retirement plan is exempt from judgment, attachment, execution, distress for rent, and seizure for the satisfaction of debts if the plan (i) is intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code of 1986, as now or hereafter amended, or (ii) is a public employee pension plan created under the Illinois Pension Code, as now or hereafter amended.

(b) 'Retirement plan' includes the following:

\* \* \*

(4) a public employee pension plan created under the Illinois Pension Code, as now or hereafter amended." *Id.*

¶ 23    Notwithstanding this clear statutory language, the Association insists, and the circuit court found, that we are bound by the United States Supreme Court's analysis in *Clark*—adopted by this court in *Branit*—to conclude that Mr. Pallohusky's widow's annuity is not exempt from collection because it lacks the characteristics of a "retirement benefit." The Association's and the circuit court's reliance on these cases is misplaced.

¶ 24    Neither *Branit* nor *Clark* dealt with the kind of retirement benefit that is at issue here—a pension benefit that, by virtue of its creation under the Pension Code, is expressly exempted from collection both under section 5-218 of the Pension Code and under section 12-2006 of the Code of Civil Procedure. Instead, the courts in those cases considered whether nonspousal inherited IRAs, which did *not* clearly fall within any exemption, should be considered exempt in light of the purpose underlying the exemption of retirement funds.

¶ 25    In *Clark*, the Supreme Court considered whether an individual filing for bankruptcy may exempt from her bankruptcy estate an IRA she inherited from her mother. The debtor in *Clark* relied on section 522(b)(3)(C) of the Bankruptcy Code, which exempts " 'retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under [various provisions] of the Internal Revenue Code.' " 11 U.S.C. § 522(b)(3)(C), (d)(12) (2012). The provisions of the Internal Revenue Code cited in section 522(b)(3)(C) of the Bankruptcy Code include those that establish the requirements for traditional and Roth IRAs. *Clark*, 573 U.S. at ___, 134 S. Ct. at 2244-45. The *Clark* Court noted that, to qualify for exemption under section 522(b)(3)(C), funds must satisfy "two conditions": they must be " 'retirement funds' "—a term not defined by the Bankruptcy Code—and they must be held in a fund or account that is exempt from taxation. *Clark*, 573 U.S. at ___, ___, 134 S. Ct. at 2246, 2248. In deciding whether the funds held in an inherited IRA still qualified as "retirement funds," the Supreme Court examined the legal characteristics of such accounts under the Internal Revenue Code, which did not permit future contributions, required the holder to withdraw funds irrespective of the holder's age, and permitted withdrawal of the entire account balance at any time and for any purpose. The *Clark* Court concluded that these characteristics made inherited IRAs objectively different from traditional IRAs. *Id.* at ___, 134 S. Ct. at 2246-47. Funds held in inherited IRAs were therefore not " 'retirement funds,' " *i.e.*, "sums of money set aside for the day an individual stops working." *Id.* at ___, 134 S. Ct. at 2246-47.

¶ 26    In *Branit*, this court adopted the reasoning in *Clark* to hold that a nonspousal inherited IRA, which the debtor had inherited from his mother, was not exempt from collection under section 12-1006 of the Code of Civil Procedure. *Branit*, 2015 IL App (1st) 141297, ¶ 26. Through use of the disjunctive "or," subsection (a) of that section establishes two independent exemptions: the first for an interest in a "retirement plan" if it "is intended in good faith to qualify as a retirement plan under applicable provisions of the Internal Revenue Code" (735

- 6 -

ILCS 5/12-1006(a)(i) (West 2014)), and the second for an interest in "a public employee pension plan created under the Illinois Pension Code" (735 ILCS 5/12-1006(a)(ii) (West 2014)). Subsection (b) goes on to define a "[r]etirement plan" to include, among other things, "an individual retirement annuity or individual retirement account," and "a public employee pension plan created under the Illinois Pension Code." 735 ILCS 5/12-1006(b)(3), (b)(4) (West 2014).

¶ 27    According to the *Branit* court, it was not enough for an IRA to be included in subsection (b)'s definition of a "retirement plan"; it must also satisfy subsection (a)(i)'s requirement of being "intended in good faith to qualify as a retirement plan under the Internal Revenue Code." *Branit*, 2015 IL App (1st) 141297, ¶ 19. In the *Branit* court's view, this created an "ambiguity" requiring the use of "external aids for proper construction of the statute." *Id.* For this it turned to the *Clark* Court's analysis of the objective characteristics of such plans, ultimately concluding that a nonspousal inherited IRA has "literally nothing" to do with retirement and should therefore not be considered exempt. (Emphasis omitted.) *Id.* ¶ 26.

¶ 28    However, as other courts have recognized, *Clark*'s application is limited. See *In re Swarup*, 521 B.R. 382, 387 nn.28, 31 (Bankr. M.D. Fla. 2014) (acknowledging the holding in *Clark*, but finding pre-*Clark* authority to be "more persuasive" on the issue of whether a contingent interest in an ex-spouse's 401(k) plan was exempt from the claims of creditors in bankruptcy proceedings); *In re Williams*, 556 B.R. 456, 463 (Bankr. C.D. Cal. 2016) (noting that, while *Clark* "provided some guidance," for the proper construction of exemptions under California law, it "d[id] not address the situation at hand[,] where the account [wa]s a pension, not an IRA"). Here, there is simply no reason to apply the analysis in *Clark* and *Branit* because pension benefits are afforded their own exemption under subsection (a)(ii) of section 12-1006 of the Code of Civil Procedure, whether or not they also satisfy the requirements of subsection (a)(i). Because benefits under such plans are unambiguously and unconditionally exempt under both section 5-218 of the Pension Code and section 12-1006 of the Code of Civil Procedure, there is no reason for us to determine the objective nature of such plans based on their characteristics, as the *Clark* and *Branit* courts did with nonspousal inherited IRAs.

¶ 29    At oral argument in this case, the Association could identify no ambiguity in the relevant statutory exemptions. Instead, it relied heavily on our decision in *Reynolds v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 2013 IL App (1st) 120052, for the proposition that—regardless of the precise statutory language—the true intent of the legislature when it established the widow's annuity was to support the surviving spouse of a police officer only during the surviving spouse's retirement. This reliance on *Reynolds* is misplaced. In that case, the administrator of the estate of a surviving spouse sought a retroactive increase in the amount of the monthly annuity after her death. *Id.* ¶ 2. We held that, although the decedent may have sought such an increase during her own lifetime, the legislature unequivocally provided that the benefit could not be transferred or inherited. *Id.* ¶ 24. Although we noted in *Reynolds* that this result was *consistent* with the important public policy concern of ensuring that adequate funds are available to meet the needs of public servants and their families "during their retirement years" (*id.* ¶ 32), the result in that case was driven by the plain and unambiguous language of the Pension Code. As we noted in *Reynolds*, a court may certainly "consider the reason for the law, the problem sought to be remedied, the purpose to be achieved, and the consequences of construing the statute one way or another," but "[t]he most reliable indicator

of legislative intent is the language of the statute, given its plain and ordinary meaning." *Id.* ¶ 25.

¶ 30 Pursuant to the plain language of section 5-218 of the Pension Code and section 12-1006 of the Code of Civil Procedure, Mr. Pallohusky's widow's annuity, like any other benefit granted by a public employee pension plan, is expressly exempt from collection. We have no power to "restrict or enlarge the meaning of [these] unambiguous statute[s]" (*People ex rel. Nelson Brothers Storage & Furniture Co. v. Fisher*, 373 Ill. 228, 234 (1940)), and "will not resort to outside sources to construe [their] meaning" (*Toner*, 259 Ill. App. 3d at 70).

¶ 31 C. Proper Party to Bring a Motion to Vacate or Reconsider a Judgment

¶ 32 The Association also asserts, as an alternative basis on which we may affirm the circuit court's judgment, that Mr. Pallohusky's motion to vacate or to reconsider the circuit court's turnover order was improper because Mr. Pallohusky did not participate in briefing or argument on the Association's motion seeking that order, which was opposed only by the Fund as the third-party citation respondent. However, section 2-1203 of the Code of Civil Procedure provides that "*any party* may, within 30 days after the entry of the judgment *** file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief." (Emphasis added.) 735 ILCS 5/2-1203(a) (West 2014). And under section 2-1301(e) of the Code of Civil Procedure, a circuit court "may on motion filed within 30 days after entry thereof set aside any final order or judgment upon any terms and conditions that shall be reasonable." 735 ILCS 5/2-1301(e) (West 2014). Thus, Mr. Pallohusky was a proper party to bring the motion to reconsider and, regardless, the circuit court had the ability to reconsider its prior ruling. The Association has not shown that Mr. Pallohusky's lack of involvement in the underlying briefing provided the circuit court with an independent basis on which to deny his motion to vacate or reconsider the court's turnover order.

¶ 33 CONCLUSION

¶ 34 For the above reasons, we hold that a widow's annuity provided to the surviving spouse of a deceased police officer pursuant to article 5 of the Pension Code is exempt from collection and reverse the circuit court's turnover order dated February 17, 2016.

¶ 35 Reversed.