# Illinois Official Reports

## Appellate Court

---

### *Chicago Police Sergeants' Ass'n v. Pallohusky*, 2019 IL App (1st) 181194

---

| | |
|---|---|
| Appellate Court Caption | CHICAGO POLICE SERGEANTS' ASSOCIATION, POLICEMEN'S BENEVOLENT & PROTECTIVE ASSOCIATION, UNIT 156A, Plaintiff-Appellee, v. JOHN PALLOHUSKY, Defendant (The John Pallohusky Trust, Third-Party Respondent-Appellant). |
| District & No. | First District, First Division<br>Docket No. 1-18-1194 |
| Filed | March 29, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-L-7546; the Hon. Alexander P. White, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Thompson, of Gottreich Grace & Thompson, of Chicago, for appellant.<br><br>John F. Stimson, of Law Offices of John F. Stimson, Ltd., of Skokie, for appellee. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Pierce and Walker concurred in the judgment and opinion.

**OPINION**

¶ 1    This case concerns the legal status of residential property purportedly conveyed to the John Pallohusky Trust (Trust) through the will of Mr. Pallohusky's late wife, Mary O'Toole, for her husband's benefit. Mr. Pallohusky is the former president of the Chicago Police Sergeants' Association Policemen's Benevolent & Protective Association, Unit 156A (Association). After Mr. Pallohusky pled guilty to embezzling funds from the Association, the Association obtained a judgment against him and initiated collection proceedings by filing a citation to discover assets against the Trust, among other things. The circuit court ultimately granted the Association's motion for a turnover order, finding that the Trust was invalid under the merger doctrine because Mr. Pallohusky was both its sole trustee and its sole beneficiary. We agree and affirm the decision of the circuit court.

¶ 2                                    I. BACKGROUND

¶ 3    We detailed much of the factual background of this ongoing effort by the Association to collect on its $690,215.17 judgment against Mr. Pallohusky in our prior decision, *Chicago Police Sergeants' Ass'n v. Pallohusky*, 2017 IL App (1st) 162822, ¶¶ 1-4. That case was an appeal from a turnover order for a survivor annuity paid to Mr. Pallohusky from his late wife's pension, in which we reversed the circuit court because we found that the annuity was exempt from collection proceedings. We repeat the facts here only to the extent they are necessary to the understanding of this appeal.

¶ 4    The Association sued Mr. Pallohusky on June 7, 2010. Mary O'Toole executed her last will and testament on July 6, 2010, the day before she died. Section one of the will devised personal property to various family members, including Mr. Pallohusky. Section two of the will gave "the residue of [her] estate *** to the trustee of the Trust for the benefit of [her] Husband, John Pallohusky (John Pallohusky Trust)." The residue of Ms. O'Toole's estate consisted of a single-family home located at 5123 North Mobile Avenue, Chicago, Illinois (Mobile Property), which she alone purchased and owned in its entirety before her death. Section four named Mr. Pallohusky as executor of Ms. O'Toole's estate.

¶ 5    Sections 7 through 11 of Ms. O'Toole's will set forth the Trust provisions. In section seven, Ms. O'Toole named Mr. Pallohusky as trustee of the Trust, and if he "refuse[d] or otherwise cease[d] to act as trustee," she named first Eleanor Kobit and then Chase Bank as successor trustees. Section eight, subpart (C) stated "[a]ny trustee named herein may resign by giving thirty (30) days written notice to the successor trustee enumerated" in section seven.

¶ 6    Section nine of the will directed how the trust property was to be used:

      "(1) The trustee shall pay net income of the Trust as the trustee, in his judgment, may from time to time deem necessary, advisable or expedient for the expenses of the beneficiary, for his health (including rehabilitation for any disorder mental or physical), maintenance, education and reasonable comfort and best interests. The

balance of the said net income, if any, shall be accumulated by the trustee and from time to time added to the principal of the Trust. If in the judgment of the trustee such income shall be insufficient for expenses of the beneficiary for his health (including rehabilitation for any disorder mental or physical), maintenance, education and reasonable comfort and best interests, the trustee may pay to or apply for the benefit of the beneficiary such amounts from the principal of the Trust.

(2) The assets of the Trust, including the residential property are for the benefit of the beneficiary (John Pallohusky) for his lifetime. If at any time the Trustee determines that the assets of the Trust should be sold, for his health (including rehabilitation for any disorder mental or physical), maintenance, education and reasonable comfort and best interests the proceeds from the sale shall be included in the Trust."

¶ 7 Section 10 stated that "[u]pon the death of the beneficiary (John Pallohusky) the Trust is terminated and the assets of the trust (after paying all Trust indebtedness) shall be distributed per capita to my heirs who survive the beneficiary."

¶ 8 Section eleven vested the named trustee with certain "powers and discretions," including the power "[t]o sell at public or private sale, contract to sell, grant options to buy, convey, exchange, [or] transfer any real or personal property of the trust." Section 11 also allowed the trustee "[t]o cause any securities or other property, real or personal belonging to be held or registered in the name of the Trustee."

¶ 9 On April 17, 2012, Mr. Pallohusky pled guilty to embezzling over $1 million from the Association. On July 30, 2013, the Association obtained a judgment in its favor against Mr. Pallohusky in the amount of $690,215.17, based on his embezzlement of funds from the Association. On September 18, 2014, Ms. O'Toole's sister, Eleanor Kobit, replaced Mr. Pallohusky as executor of Ms. O'Toole's estate. On February 23, 2015, Mr. Pallohusky resigned as trustee of the Trust and was replaced by Ms. Kobit. In her capacity as executor, Ms. Kobit executed a deed on May 7, 2015, purporting to transfer the Mobile Property to the Trust. That deed was recorded on June 11, 2015.

¶ 10 As part of its ongoing effort to collect on its judgment against Mr. Pallohusky, the Association served a third-party citation to discover assets on the Trust on September 8, 2015. On November 24, 2015, the circuit court entered an order dismissing the citation, but set a briefing schedule on the "oral motion of [the Association] for the turnover of title" to the Mobile Property, and set the matter for a hearing.

¶ 11 During the evidentiary hearing on March 29, 2017, the circuit court heard the testimony of Michael Goldberg—the attorney and certified public accountant who drafted Ms. O'Toole's will—along with the testimony of two of her sisters, Ms. Kobit and Kathlyn O'Toole. This testimony largely addressed Ms. O'Toole's intent in modifying a prior will and her wishes with respect to the Mobile Property. The Association objected to various parts of this testimony on relevance, hearsay, and foundational grounds—objections the circuit court took under advisement with the motion for turnover. The Association also argued that all of this extrinsic evidence was unnecessary because Ms. O'Toole's intent to create a sham trust was clear and unambiguous from the document itself.

¶ 12 On May 9, 2018, the circuit court entered its memorandum decision and judgment. The court found that the Trust was invalid and ordered that the Mobile Property could be sold to satisfy the Association's judgment against Mr. Pallohusky. The circuit court noted that "[i]t does seem as if [Ms. O'Toole] wanted to protect the Mobile Property from outside creditor[s],

and so created the trust that Goldberg drafted in [her will]." The court found that "not all parties to the trust had the intention of creating a valid trust" because Mr. Pallohusky "waited from July 7, 2010 until February 23, 2015 to resign his interest as trustee." During that time, he "had been vested with title of trustee and the sole beneficiary," and therefore "the trust was terminated by merger." The court found that Mr. Pallohusky "waited unreasonably too long to resign his interest as sole beneficiary or trustee *** to avoid the merger doctrine." This appeal followed.

¶ 13                                    II. JURISDICTION

¶ 14    The Trust timely filed its notice of appeal on June 6, 2018, challenging the circuit court's memorandum decision and judgment of May 9, 2018. We have jurisdiction under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 15                                    III. ANALYSIS

¶ 16    Section 2-1402 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1402 (West 2016)) allows a judgment creditor, like the Association, to initiate a proceeding to discover assets owned by a judgment debtor and to "compel[ ] the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment." A circuit court furthermore has "broad powers to compel parties to satisfy a judgment with discovered assets." *Wells Fargo Bank Minnesota, NA v. Envirobusiness, Inc.*, 2014 IL App (1st) 133575, ¶ 13.

¶ 17    The Trust's claim that the Mobile Property is protected from a turnover under this statute rests on section 2-1403 of the Code, which bars a court from ordering "the satisfaction of a judgment out of any property held in trust for the judgment debtor if such trust has, in good faith, been created by, or the fund so held in trust has proceeded from, a person other than the judgment debtor." 735 ILCS 5/2-1403 (West 2016). The Trust claims this protection because "Mary *** established the trust effective upon her death" for the benefit of her husband—who did not own the Mobile Property—and "[n]o evidence was adduced that [she] acted in bad faith in executing her will and establishing the Trust."

¶ 18    The Trust asks us to reverse the circuit court's order turning over title of the Mobile Property to the Association on two alternative grounds: (1) the legal and equitable interests in the property did not merge because Mr. Pallohusky was not the sole beneficiary of the Trust and (2) even if Mr. Pallohusky was the sole beneficiary, his "resignation as trustee of the trust before the Mobile Property was conveyed to the trust avoided any merger." The Trust also suggests in an additional argument that the circuit court's turnover order was a remedy "unsupported by law," claiming that Mr. Pallohusky had only a "lifetime interest" in the property and a sale to satisfy his creditors "would be at the expense of the remainder beneficiaries whom [Ms. O'Toole] clearly intended to have her house." We address each argument in turn.

¶ 19    Our "first concern in the construction of a trust is to ascertain the intent of its creators and give effect to the intent, if it does not conflict with the law or public policy of the State." *2416 Corp. v. First National Bank of Chicago*, 64 Ill. 2d 364, 371 (1976). We determine the settlor's intent "solely by reference to the plain language of the trust itself, and extrinsic evidence may be admitted to aid interpretation only if the document is ambiguous and the settlor's intent cannot be ascertained." *Stein v. Scott*, 252 Ill. App. 3d 611, 615 (1993). We interpret the

relevant statutes and review the circuit court's construction of the trust instrument *de novo*. *Du Page County Airport Authority v. Department of Revenue*, 358 Ill. App. 3d 476, 483 (2005); *Altenheim German Home v. Bank of America, N.A.*, 376 Ill. App. 3d 26, 32 (2007).

¶ 20    A trust "is a fiduciary relationship with respect to property, arising from a manifestation of intention to create that relationship and subjecting the person who holds title to the property to duties to deal with it for the benefit of *** one or more persons, at least one of whom is not the sole trustee." Restatement (Third) of Trusts § 2 (2003). It is well established that "[e]very trust must have a settlor, a corpus, a trustee, and a beneficiary." *National City Bank of Michigan/Illinois v. Northern Illinois University*, 353 Ill. App. 3d 282, 289 (2004). A beneficiary "need not be named in the terms of the trust, [but she] may be designated by class terminology or by description," such as an "heir." Restatement (Third) of Trusts § 44 cmt. b (2003).

¶ 21    In addition to the basic trust elements, the trust must specify "the nature and quality of each beneficiary's interest." *Albrecht v. Brais*, 324 Ill. App. 3d 188, 191 (2001). As with the rest of the trust instrument, "the extent of the interest of a trust beneficiary depends upon the intention manifested by the settlor." Restatement (Third) of Trusts § 49 (2003). "[T]he trustee holds the legal title to the property [whereas] the beneficiary holds the equitable title." *Campbell v. Campbell*, 2017 IL App (3d) 160619, ¶ 17 (citing Restatement (Third) of Trusts § 2 cmt. d (2003)).

¶ 22    Section 69 of the Restatement (Third) of Trusts (Restatement) explains what happens when this division of interests is not present: the trust fails. Restatement (Third) of Trusts § 69 (2003). As the Restatement puts it: "If by *** will [or other means] *** the entire beneficial interest in trust property passes to the trustee, the trust terminates and the trustee holds the property free of trust." Restatement (Third) of Trusts § 69 cmt. a (2003). Another authority on trusts puts it this way:

> "It is essential to the creation and existence of a valid express trust that there be *** a separation in different persons of the legal and equitable interests in the same property [citation], and, if there is no separation of legal and equitable interests of a trust—that is, if the entire legal and equitable estates come together in the same person—the doctrine of merger may apply and the trust is terminated." 76 Am. Jur. 2d *Trusts* § 91 (1992).

¶ 23    The Association convinced the circuit court, relying primarily on *Wilson v. Harrold*, 288 Ill. 388 (1919), that no trust was created that would protect the Mobile Property from turnover under section 2-1403 of the Code (735 ILCS 5/2-1403 (West 2016)). The Trust argues that *Wilson* and the merger doctrine do not apply here because Ms. O'Toole designated her husband as trustee of the trust, but "also specifically directed that the trust property be distributed to other beneficiaries, her then[-]surviving[ ]heirs, upon John's death." Therefore, the Trust maintains, "John has never been the sole beneficiary of the Trust."

¶ 24    In section two of her will, Ms. O'Toole gave "the residue of [her] estate *** to the trustee of the Trust for the benefit of [her] Husband, John Pallohusky (John Pallohusky Trust)" and named no other beneficiaries. Moreover, the phrase "*the* beneficiary" appears no less than five times and, in case there was any ambiguity, two of those references to a single beneficiary are framed as "the beneficiary (John Pallohusky)." The Trust is correct that there is a reference to other beneficiaries, but it is only that "[u]pon the death of the beneficiary (John Pallohusky) the

Trust is terminated and the assets of the trust (after paying all Trust indebtedness) shall be distributed per capita to my heirs who survive the beneficiary."

¶ 25 Although Ms. O'Toole's heirs need not be named to have an ascertainable beneficial interest in the Mobile Property (Restatement (Third) of Trusts § 44 cmt. b (2003)), the scope of the interest left to her husband and the extent of his powers as trustee negated any genuine contingent beneficial interest for Ms. O'Toole's heirs. Section nine provided that "assets of the Trust *** are for the benefit of the beneficiary (John Pallohusky) for his lifetime," but that if "at any time the Trustee determines that the assets of the Trust should be sold, for his health ***, maintenance, education and reasonable comfort and best interests the proceeds from the sale shall be included in the Trust." It is clear from these terms that Mr. Pallohusky had the right to sell the Mobile Property and to use all of these proceeds for anything that would support his "health ***, maintenance, education and reasonable comfort and best interests." There was nothing that the unnamed heirs could do to prevent Mr. Pallohusky from dealing with the property as he wished. See 76 Am. Jur. 2d *Trusts* § 91 (1992). Mr. Pallohusky's power over the property as trustee and rights to the property as lifetime beneficiary were simply too great to construe the unnamed heirs as additional beneficiaries in order to avoid merger. As the United States Bankruptcy Court for the Northern District of Illinois recognized in denying bankruptcy protection for a similar arrangement that the debtor claimed was a trust, "[b]y vesting control of the trust in its primary lifetime beneficiary and granting him complete discretion [over the trust corpus], the Trust reveals that the settlor's primary dispositive intention was the preservation of her residuary estate for [the] benefit of her husband, rather than *** other beneficiaries." *In re McCoy*, 274 B.R. 751, 765 (Bankr. N.D. Ill. 2002).

¶ 26 The cases that the Trust cites, in support of its contention that Mr. Pallohusky was not the sole beneficiary of the John Pallohusky Trust, only illustrate the point that the only real beneficiary of this Trust was Mr. Pallohusky. The Trust cites *Summers v. Higley*, 191 Ill. 193, 196 (1901), in which our supreme court noted that "[t]he fact that [the surviving spouse] is beneficiary as well as trustee does not defeat the trust." However, in *Summers*, the testator's will devised property to his surviving wife for, in the court's words, "certain specified uses," including "for her own support and for the maintenance and education of their children named in the will." *Id.* Unlike here, *Summers* involved a trust document in which the trustee took charge of property for the benefit of several named individuals, and not just for her own benefit, and there were rights of other beneficiaries that could be enforced and that limited the wife's control over the trust property.

¶ 27 *Burbach v. Burbach*, 217 Ill. 547 (1905), is similar. There, three surviving sons were devised property "in trust" and were directed to pay the net income from that property equally to five beneficiaries, three of whom were the named trustees. *Id.* at 549. The plaintiff argued that three-fifths of the trust was extinguished by merger because the three brothers could not serve as trustees for themselves. *Id.* Relying on *Summers*, our supreme court disagreed, holding that "where one is a trustee for himself *and others* that fact does not defeat the trust." (Emphasis added.) *Id.* at 550. Unlike *Summers* and *Burbach*, Mr. Pallohusky was the Trust's sole real beneficiary. And as sole trustee, his only obligation was to act purely for his own benefit, not for the benefit of any purported co-beneficiaries who were unnamed, not yet determined, and had no right to protection from Mr. Pallohusky using the Trust property and proceeds solely for his own benefit.

- 6 -

¶ 28    The Trust correctly notes that we are guided by the settlor's intent in creating the trust and places particular emphasis on the circuit court's statement that "[i]t does seem as if [Ms. O'Toole] wanted to protect the Mobile Property from outside creditor[s]." However, the intent that is significant here is Ms. O'Toole's clear desire to give Mr. Pallohusky complete control over the Trust property. The Trust language unambiguously evinces her intent to give her husband the sole benefit of the Mobile Property, while simultaneously granting him legal authority to do what he wished with that property.

¶ 29    Although the parties debate the significance of the extrinsic evidence gathered to ascertain Ms. O'Toole's intent, we need not consider it, since we find the language of the Trust is clear and unambiguous. *Stein*, 252 Ill. App. 3d at 614.

¶ 30    We next consider the effect, if any, of Mr. Pallohusky's 2015 resignation as trustee. The Trust argues that, even if the trust document named Mr. Pallohusky as both the sole trustee and the sole beneficiary, his resignation in February 2015 avoided any merger. It relies on comment d of section 69 of the Restatement, which provides in relevant part that "[a] sole beneficiary *** may avoid becoming sole trustee by refusing to accept appointment as trustee or by promptly declining to serve as sole trustee following the death or resignation of a co-trustee." Restatement (Third) of Trusts § 69 cmt. d (2003).

¶ 31    As noted above, Ms. O'Toole executed her will on July 6, 2010, and passed away the following day. Ms. Kobit replaced Mr. Pallohusky as executor of the estate in 2014, and Mr. Pallohusky resigned as trustee of the Trust on February 23, 2015. Ms. Kobit, as executor, prepared a deed purporting to transfer the Mobile Property out of the estate and into the Trust on May 7, 2015. The Trust construes this sequence of events as establishing that neither Mr. Pallohusky nor the Trust "ever held title to any property while [he] was a trustee." It argues that no merger occurred because "at no time could [he] have held both legal and equitable title" to the property.

¶ 32    We disagree. Mr. Pallohusky did not "promptly" resign as trustee, but instead waited nearly five years to do so. The fact that the Mobile Property was not formally transferred into the trust until May 7, 2015, is simply irrelevant. Whereas a failure to formally transfer trust property in an *inter vivos* trust renders the trust ineffective (Restatement (Third) of Trusts § 16 (2003)), in a testamentary trust, like the one that Mary O'Toole created, "the transfer occurs automatically upon the death of a settlor who leaves a valid, unrevoked will" (Restatement (Third) of Trusts § 17 cmt. e (2003)). In its opening brief on appeal, the Trust correctly acknowledged that "Mary *** established the trust *effective upon her death*." (Emphasis added.) Contrary to the Trust's gloss of events, Ms. Kobit's executor's deed in 2015 is not the starting point for determining whether Mr. Pallohusky's resignation was "prompt." Rather, the will itself transferred the property to the Trust and commenced the nearly five years of legal control Mr. Pallohusky enjoyed before he resigned as trustee. This cannot be considered a prompt resignation under section 69 of the Restatement.

¶ 33    Finally, the Trust argues, without citation to authority, that the circuit court's turnover order was a remedy "unsupported by law." It insists that the house should not be sold to benefit Mr. Pallohusky's creditor because such a sale would be at the expense of the remainder beneficiaries, whom Ms. O'Toole "clearly intended to have her house."

¶ 34    As stated above, the provisions of the Trust did not show that Ms. O'Toole intended to create a valid trust that would render the Mobile Property exempt from turnover to the Association. Rather, the Trust provisions vested equitable interest in the only named

beneficiary—Mr. Pallohusky—and also gave him full legal interest as named trustee, which he failed to decline or promptly renounce. It was lawful for the circuit court to find that Mr. Pallohusky owned the Mobile Property free of trust and order the title turned over to the Association to satisfy its judgment against him. We affirm the circuit court's judgment doing so.

## IV. CONCLUSION

The circuit court correctly determined this was a "sham" trust, in which equitable and legal interest merged in Mr. Pallohusky, and the Association was entitled to an order turning over title to the Mobile Property to satisfy its judgment against him. For these reasons, we affirm the circuit court's order to turn over the Mobile Property title to the Association.

Affirmed.