2021 IL App (1st) 192427

No. 1-19-2427

Opinion filed April 27, 2021.

Second Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| HARLEYSVILLE INSURANCE CO., as Subrogee of Navigant Development, LLC, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 2018 L 008623 |
| MOHR ARCHITECTURE, INC.; FOX VALLEY ENGINEERING, INC., n/k/a Fox Valley OCD, Inc.; BRAMCO CONSTRUCTION COMPANY; CAMPBELL TRUSS, INC.; ARCH-H, LLC; and ADVANCE CONSULTING GROUP INTERNATIONAL, | ) ) ) ) ) ) ) | |
| | ) ) | The Honorable Margaret A. Brennan, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE LAVIN delivered the judgment of the court, with opinion.
Justices Pucinski and Cobbs concurred in the judgment and opinion.

**OPINION**

¶ 1    Navigant Development, LLC (Navigant), owned a restaurant property at 1419 N. Wells Street in Chicago (the property). After two separate tenants completed two separate renovations at the property, defects surfaced with respect to the trusses supporting the property's ceiling. Harleysville Insurance Co. (Harleysville), Navigant's insurer, paid Navigant for repairs and lost

rent. Harleysville, as Navigant's subrogee, then brought this action against various contractors and subcontractors involved in the two renovation projects, alleging multiple counts of breach of contract and negligence.

¶ 2 Ultimately, the circuit court granted several defendants' motions to dismiss and one defendant's motion for summary judgment, finding that Navigant was not an intended third-party beneficiary to contracts between its tenants, contractors, and subcontractors. Consequently, Harleysville could not bring breach of contract claims based on those contracts. Additionally, the economic loss doctrine barred Harleysville's negligence claims. In this interlocutory appeal, Harleysville maintains that Navigant was an intended third-party beneficiary of the contracts at issue and that the economic loss doctrine does not apply. For the following reasons, we affirm the court's judgment.

¶ 3                                    I. Background

¶ 4                          A. Renovation From 2008-09

¶ 5 From about 2008 to 2009, Old Town Entertainment, LLC (Old Town), Navigant's tenant, renovated the property to operate a restaurant and bar called 33 Club.[1] Old Town hired Mohr Architecture, Inc. (Mohr), to design and prepare the renovation plans. In turn, Mohr hired Fox Valley Engineering, Inc., now known as Fox Valley OCD, Inc. (Fox), to perform the engineering work. Old Town also hired Campbell Truss, Inc. (CTI), to maintain and repair trusses during the renovation. According to Harleysville, these entities knew that Navigant owned the property, and Old Town was required to submit all proposed work to Navigant and/or Anthony Tomaska for approval before work commenced. Tomaska was Navigant's sole member and manager as well as a member of Old Town.

---

[1]These facts are taken from Harleysville's amended complaint or are otherwise undisputed at this juncture.

¶ 6                                B. Renovation From 2011-12

¶ 7     In October 2011, Navigant leased the property to Bottleneck Wells, LLC (Bottleneck), which planned to renovate the property to operate a restaurant called the Old Town Pour House (Pour House). Bottleneck hired Bramco Construction Company (Bramco) to be the general contractor and Arch-H, LLC (Arch-H), to provide architectural design services. In turn, Arch-H hired Advance Consulting Group International (Advance) to provide engineering and design specifications. Additionally, Bottleneck's lease required it to submit all proposed alterations to Navigant for approval.

¶ 8                                C. 2016 Damage Discovery

¶ 9     In 2016, Navigant or Bottleneck discovered that the property's ceiling was sagging and damaged in places. Further investigation revealed that several trusses supporting the roof and ceiling were bowed, cracked, or damaged. Harleysville then paid Navigant approximately $870,000 for damages to the trusses and lost rent. Harleysville claims that improper work during either or both of the renovations damaged the trusses.

¶ 10                               D. Litigation

¶ 11    Harleysville, as Navigant's subrogee, filed this action in August 2018, naming as defendants the entities involved in the two renovations. Old Town and Bottleneck, however, are not parties to this litigation. In January 2019, Harleysville filed an amended complaint, alleging that Navigant was an intended third-party beneficiary of the renovation contracts and that defendants breached those contracts. According to Harleysville, Navigant was an intended third-party beneficiary because defendants knew the work was to be performed at a property owned by Navigant. Harleysville further argued that defendants' negligence with respect to the trusswork damaged the trusses.

¶ 12　Harleysville attached to its amended complaint the tenants' respective agreements with Mohr, Bramco, CTI, and Arch-H, which we will later address in further detail. Harleysville did not attach, however, any contract involving Advance or Fox. Additionally, Harleysville did not attach Navigant's lease agreements with Old Town and Bottleneck.

¶ 13　Advance filed an answer and affirmative defenses, denying that (1) it knew Navigant owned the property, (2) it knew Navigant would benefit from Advance's work, (3) Navigant was an intended third-party beneficiary, and (4) it had a duty to prevent harm to Navigant. Advance also argued that Navigant claimed only economic loss and, thus, the economic loss doctrine barred Harleysville's negligence claim. Advance later filed a motion for summary judgment, attaching an affidavit from its owner. According to the affidavit, Advance and Arch-H engaged in a series of e-mails, which led Advance to work at the property. Advance never entered into an agreement with Navigant or Bottleneck, however. The e-mails attached to the affidavit did not mention those entities.

¶ 14　CTI filed a combined motion to dismiss the counts against it. 735 ILCS 5/2-619.1 (West 2018). Similar to Advance, CTI argued that Navigant was not an intended third-party beneficiary to CTI's contract with Old Town and the economic loss doctrine precluded Harleysville's negligence claim. Mohr and Bramco then filed their own combined motions to dismiss, raising similar defects. Additionally, Arch-H moved to dismiss the breach of contract count against it under section 2-615 of the Code of Civil Procedure (*id.* § 2-615), arguing that Navigant was not an intended third-party beneficiary to its contract, and Fox moved to dismiss the negligence claim against it under section 2-615, arguing the claim was barred by the economic loss doctrine.

¶ 15　In response to defendants' motions, Harleysville argued that Navigant was an intended third-party beneficiary of defendants' contracts because they knew that Navigant, rather than Old

Town or Bottleneck, owned the property where work was to be completed, and "that Navigant would be, in part, a party benefitting from and enjoying the fruits of their work." Additionally, Navigant's leases with its tenants included plans for renovation and required the tenants to submit proposed alterations to Navigant for approval.

¶ 16    Harleysville further argued that the economic loss doctrine did not preclude Harleysville's negligence claims because "this is not a case of an unsatisfied customer nor the case of merely a defective product, but rather the case of property damage, and other property damage that extends well beyond just the work previously performed by the Defendants." We note that the amended complaint did not allege property damage beyond the trusses, which were subjects of both renovation projects. Additionally, Harleysville argued that Navigant's damages reflected physical injury resulting from a sudden and calamitous event, satisfying an exception to the economic loss doctrine. See *Fireman's Fund Insurance Co. v. SEC Donohue, Inc.*, 176 Ill. 2d 160, 165 (1997). Harleysville's attachments to the response included Bottleneck's lease with Navigant.

¶ 17    On June 28, 2019, the circuit court granted defendants' motions with prejudice. The court found that the sudden and calamitous event exception to the economic loss doctrine did not apply, as the amended complaint alleged only that the trusses bowed and cracked over a period of eight years. *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 200-01 (1997) (stating that gradual deterioration is insufficient to satisfy this exception); *Westfield Insurance Co. v. Birkey's Farm Store, Inc.*, 399 Ill. App. 3d 219, 232 (2010) (recognizing that this exception requires damage to property other than the property that is the subject of the contract). Additionally, Navigant was not an intended third-party beneficiary to the renovation contracts. Even if defendants knew Navigant owned the property, it did not follow that they intended to benefit

Navigant. Furthermore, Mohr's contract and CTI's contract with Old Town did not mention Navigant. Similarly, Bramco's contract and Advance's contract contained no affirmative statement showing an intent to benefit Navigant. Moreover, the contract between Arch-H and Bottleneck explicitly stated that the contract would not create a contractual relationship or cause of action in favor of a third party.

¶ 18    Arch-H subsequently filed a section 2-615 motion to dismiss the negligence claim against it, citing the court's order granting codefendants' motions. Additionally, Fox moved to dismiss the breach of contract claim against it under section 2-619. Fox argued that it had entered into a contract with only Mohr, through informal e-mails and an invoice, which were attached to Fox's motion. Furthermore, Navigant was not an intended third-party beneficiary of that contract.

¶ 19    Harleysville, however, filed a motion to reconsider the court's dismissal/summary judgment order. According to Harleysville, while ownership of a property *after* the contract's formation and execution may be insufficient to render one an intended third-party beneficiary, ownership of a property at the time of the contract's formation and execution was sufficient. Harleysville also argued that it was an intended third-party beneficiary of Bramco's contract with Bottleneck because Bramco's subcontracts named Navigant as an additional insured. Harleysville attached several agreements between Bramco and its subcontractors.

¶ 20    Harleysville also responded to Arch-H's motion to dismiss the negligence claim against it, arguing that the economic loss doctrine did not bar its negligence claim because Arch-H was in the business of supplying information for the guidance of others. We note that Harleysville has since abandoned any reliance on that exception. Harleysville further argued, however, that the doctrine did not apply because defendants owed extracontractual duties to Navigant, the property owner, and Navigant did not have the opportunity to bargain for Arch-H's services.

¶ 21    Defendants responded to the motion for reconsideration, arguing, among other things, that Harleysville's motion improperly raised new arguments and that Navigant's ownership of the property at the time the contract was formed and executed did not render it an intended third-party beneficiary.

¶ 22    In reply, Harleysville denied that its motion to reconsider had raised a new argument. Yet, in the same breath, Harleysville's reply argued for the first time that if the court sustained the dismissal of the breach of contract claims, it was required to reinstate the negligence claims. Specifically, Harleysville reasoned that if there were no commercial dealings between Navigant and defendants, the economic loss doctrine did not apply. The circuit court subsequently allowed defendants to file surreplies challenging the reasoning behind Harleysville's new contention.

¶ 23    On October 29, 2019, the circuit court denied Harleysville's motion to reconsider and granted the pending motions to dismiss. The circuit court, on November 19, 2019, found that the dismissal order, summary judgment order, and denial of reconsideration order were final and appealable, "there being no just reason for delay of the appeal on the issues contained within those orders." Harleysville now appeals.

¶ 24                                      II. Analysis

¶ 25    On appeal, Harleysville challenges the circuit court's dismissal orders. Section 2-619.1 of the Code of Civil Procedure permits a party to move for dismissal under both section 2-615 and section 2-619. *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 29. In addition, a section 2-615 motion challenges a complaint's legal sufficiency (*Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200, ¶ 11), while a section 2-619 motion admits the complaint's legal sufficiency but raises a defense defeating the complaint (*State ex rel. Leibowitz v. Family Vision Care, LLC*, 2020 IL 124754, ¶ 31). That being said, a confluence between section 2-615 and section 2-619

exists when an affirmative matter is apparent from the complaint. *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 19.

¶ 26 In reviewing a combined motion to dismiss, we accept all well-pleaded facts in the complaint as true. *Zander v. Carlson*, 2020 IL 125691, ¶ 3. Furthermore, we review an order granting a motion to dismiss *de novo*. *Id.* ¶ 18. Consequently, we may affirm the court's judgment on any basis in the record. *Kucinsky v. Pfister*, 2020 IL App (3d) 170719, ¶ 34.

¶ 27 Harleysville also asserts that the circuit court erroneously entered summary judgment in favor of Advance. Summary judgment is warranted where the pleadings, admissions on file, depositions and affidavits demonstrate that no genuine issue of material fact exists so that the movant is entitled to judgment as a matter of law. *Lewis v. Lead Industries Ass'n*, 2020 IL 124107, ¶ 14. In making this determination, courts construe the pleadings, admissions, depositions, and affidavits strictly against the movant and liberally in favor of the nonmovant. *Gillespie v. Edmier*, 2020 IL 125262, ¶ 9. Like the circuit court's dismissal orders, we review summary judgment rulings *de novo*. *Id.*

¶ 28 Finally, Harleysville challenges the denial of its motion to reconsider. Our standard of review with respect to such motion depends on whether the motion raised the circuit court's misapplication of law, which we review *de novo*, or raised new facts, arguments, or legal theories, which we review for an abuse of discretion. *Liceaga v. Baez*, 2019 IL App (1st) 181170, ¶ 26. Harleysville's motion to reconsider argued the misapplication of law but also added a new argument. Because the circuit court ruled upon the merits of all of Harleysville's contentions, however, we review the denial of that motion *de novo*, although the result here would be the same under any standard of review.

¶ 29                                        A. Breach of Contract

¶ 30      We begin by addressing the circuit court's dismissal of Harleysville's breach of contract claims.[2] Absent privity of contract, an owner of real property cannot sue a defendant for breach of contract unless he can show that the contracting parties undertook duties and obligations for the owner's direct benefit. *Waterford Condominium Ass'n v. Dunbar Corp.*, 104 Ill. App. 3d 371, 373 (1982). Stated differently, the contracting parties must have intended for the performance of the contract to directly benefit the third party. *Doyle v. Village of Tinley Park*, 2018 IL App (1st) 170357, ¶ 33. "[I]f the promisee bargains with the promisor to render a performance directly to a third party, in nearly every case the promisee will have intended to benefit that third party."[3] *Advanced Concepts Chicago, Inc. v. CDW Corp.*, 405 Ill. App. 3d 289, 293 (2010). Furthermore, it is unnecessary for the contract to specifically name the third-party beneficiary, but the contract must at least define a class of individual beneficiaries that would include the plaintiff. *Estate of Willis v. Kiferbaum Construction Corp.*, 357 Ill. App. 3d 1002, 1008 (2005).

¶ 31      In contrast, incidental beneficiaries have no contractual rights or standing to enforce a contract's terms. *Id.* at 1007. With respect to construction contracts, it is insufficient for the contracting parties to merely know, expect, or intend that others will benefit from the construction. *155 Harbor Drive Condominium Ass'n v. Harbor Point Inc.*, 209 Ill. App. 3d 631, 646 (1991). It is also insufficient for the contracting parties to know, expect, or intend that a third party will use the building constructed. *Estate of Willis*, 357 Ill. App. 3d at 1008; *Altevogt v. Brinkoetter*, 85 Ill. 2d 44, 52, 56 (1981) (finding that even if the defendant builder of the house

---

[2]Reviewing courts have addressed whether a party constitutes a third-party beneficiary in the context of a section 2-619 motion to dismiss, a section 2-615 motion to dismiss, and a motion for summary judgment. See, *e.g.*, *Carlson v. Rehabilitation Institute of Chicago*, 2016 IL App (1st) 143853, ¶ 15; *Bernstein v. Lind-Waldock & Co.*, 153 Ill. App. 3d 108, 110 (1987); *Federal Insurance Co. v. Turner Construction Co.*, 277 Ill. App. 3d 262, 266, 268 (1995).

[3]Contrary to Harleysville's assertion, this rule does not set forth a separate test for instances where the third-party beneficiary owned the property subject to the contract. Rather, it is an aid to deciphering the contracting parties' intent.

knew that the party with whom he contracted would not be the party to live there, knowledge that unknown third parties would reside in the house was insufficient to make those third parties direct beneficiaries). Simply put, building owners cannot enforce contractual terms absent "specific references to or obligations toward those owners."[4] *Estate of Willis*, 357 Ill. App. 3d at 1009; see also Restatement (Second) of Contracts § 302 cmt. e, illus. 19 (1981).

¶ 32     Moreover, a presumption exists that contracting parties did not intend to confer beneficiary status on a third party, as parties typically enter into contracts for their own benefit. *Doyle*, 2018 IL App (1st) 170357, ¶ 33. The plaintiff has the burden of overcoming that presumption. *155 Harbor Drive Condominium Ass'n*, 209 Ill. App. 3d at 647. Additionally, courts consider the contract's language "and the circumstances surrounding its execution" to determine whether the contracting parties intended to benefit a third party. *Doyle*, 2018 IL App (1st) 170357, ¶ 33. Yet, the contract itself must make clear that it is undertaken for the plaintiff's direct benefit. *Waterford Condominium Ass'n*, 104 Ill. App. 3d at 373. Liability to a third party cannot be expanded merely because the circumstances justify or demand further liability. *155 Harbor Drive Condominium Ass'n*, 209 Ill. App. 3d at 646.

¶ 33     While Harleysville contends that we are not limited to considering the contract's language and may look to external circumstances surrounding the contract's execution to assess the contracting parties' intent, we adhere to the well-settled rule that we may only look outside of a contract when the contract is ambiguous, an argument that Harleysville has not made with respect to the contracts at issue here. *Mt. Hawley Insurance Co. v. Robinette Demolition, Inc.*, 2013 IL App (1st) 112847, ¶ 45; see also *Stichter v. Zuidema*, 269 Ill. App. 3d 455, 456, 459,

---

[4]Given that Illinois law is well settled, we decline to address decisions from other jurisdictions. See *Nicholson v. Shapiro & Associates, LLC*, 2017 IL App (1st) 162551, ¶ 11 (stating that Illinois courts are not bound by decisions from other jurisdictions).

461-62 (1995) (finding the circuit court improperly considered extrinsic evidence in determining whether an unambiguous contract made the plaintiffs third-party beneficiaries). We find that where a contract is unambiguous, we must consider the circumstances surrounding execution as discerned from the contract itself. In any event, Harleysville has not identified any circumstances external to these contracts that would have rendered Navigant an intended third-party beneficiary thereof.

¶ 34                                      i. Mohr's Contract

¶ 35     Harleysville attached to its amended complaint a "project contract," which took the form of a letter setting forth the work Mohr proposed to perform. While Harleysville states on appeal that Old Town hired Mohr, the document was addressed to Tomaska, Jerry Kleiner, and Sam Madonia at the property's address. The record does not reveal the connection of Kleiner or Madonia to the property or the parties. Assuming the contract was entered into with Old Town, it omitted any reference to Navigant. See *155 Harbor Drive Condominium Ass'n*, 209 Ill. App. 3d at 647 (finding the condo association failed to meet its burden of proving the parties to a subcontract intended confer a direct benefit upon it where the subcontract did not mention the association or its members, did not express an intent to directly benefit them, and contained guarantees that did not mention the unit owners). Mohr's inclusion of the property's address does not otherwise show an intent to benefit the property's owner. See *Wheeling Trust & Savings Bank v. Tremco Inc.*, 153 Ill. App. 3d 136, 140-41 (1987) (finding that a purchase order's identification of the property owner's construction location as the place where materials were to be delivered did not make the owner an intended third-party beneficiary).

¶ 36     Assuming further still that Mohr knew Navigant owned the property, the omission of any reference to Navigant could very well indicate that Mohr and Old Town intentionally declined to

make Navigant a third-party beneficiary. *Salvi v. Village of Lake Zurich*, 2016 IL App (2d) 150249, ¶ 55 (finding that where the contracting parties omitted from the contract any reference to a third party known to benefit therefrom, the omission was deliberate). At best, Mohr's knowledge that Navigant owned the property would make Navigant an incidental beneficiary.

¶ 37    Furthermore, Old Town, not Navigant, was to be the user of the contractual benefit. Old Town wanted the work done for its own benefit so that it could operate 33 Club. Mohr wanted the work to be done so Mohr would be paid. Nothing shows that either entity was concerned with benefiting Navigant. See *Midwest Concrete Products Co. v. La Salle National Bank*, 94 Ill. App. 3d 394, 397-98 (1981) (finding that the subcontract was entered into entirely in the interest of the general contractor, who was fulfilling its obligations under the general contract, and the subcontractor, who thought it would profit from the project; the benefit to the entity occupying the property involved was incidental).

¶ 38    Harleysville further argues, however, that Mohr and Old Town intended to benefit Navigant because the contract stated, "Owners to provide preliminary restaurant & kitchen equipment layout." While Harleysville assumes "owner" referred to the owner of the property, a more natural reading is that "owner" referred to the owner of the business with whom Mohr was contracting, as this provision purported to impose an obligation on the owner. This provision did not confer any right upon Navigant, call for Mohr to perform the contract directly to Navigant, or set forth a mechanism for Navigant to enforce the contract. See *People ex rel. Resnik v. Curtis & Davis, Architects & Planners*, 78 Ill. 2d 381, 385-86 (1980) (finding the State was an intended third-party beneficiary of a construction contract to build a prison where, among other things, the contract required the architect to indemnify the State and hold it harmless); *Estate of Willis*, 357 Ill. App. 3d at 1009 (finding that, per *Resnik*, an owner may be a third-party beneficiary of a

contract where the contract requires subcontractors to consult him *and* sets forth a method for the owner may recover); *155 Harbor Drive Condominium Ass'n*, 209 Ill. App. 3d at 648 (finding *Resnick* to be distinguishable where the subcontracts at hand did "not describe an actual method by which the Association may recover from the subcontractors"); *Village of Fox Lake v. Aetna Casualty & Surety Co.*, 178 Ill. App. 3d 887, 911 (1989) (finding that where a statute required every contractor entering into a construction contract with a public entity to furnish a bond for work to be completed by a surety absent the contractor's performance, the public entity was an intended third-party beneficiary to the contractor's agreement with the surety).

¶ 39    Harleysville nonetheless argues that Navigant was an intended third-party beneficiary because Old Town was required to obtain Navigant's approval of renovation plans. While the amended complaint never set forth the source of that obligation, a very liberal reading of that pleading suggests that Old Town's lease with Navigant imposed this obligation. Harleysville, however, failed to attach a copy of that lease to its amended complaint or attach it to any other pleading. See 735 ILCS 5/2-606 (West 2018) (stating that "[i]f a claim or defense is founded upon a written instrument, a copy thereof *** must be attached to the pleading as an exhibit or recited therein, unless the pleader attaches to his or her pleading an affidavit stating facts showing that the instrument is not accessible to him or her"). Even assuming the lease contained such a requirement, the lease was not incorporated into the Mohr contract and Mohr did not otherwise contractually promise to submit plans to Navigant for review.

¶ 40    Harleysville has not met its burden or overcome the presumption that Navigant was not an intended, direct third-party beneficiary. To find otherwise merely because Navigant owned the property at the time the contract was formed and executed would create the exception that swallowed the rule. "Logically, an owner will always benefit from any work done on his

- 13 -

property." *Ball Corp. v. Bohlin Building Corp.*, 187 Ill. App. 3d 175, 179 (1989). Accordingly, the circuit court properly dismissed the breach of contract claim against Mohr.

¶ 41                              ii. Fox Old Town Contract

¶ 42    For the same reasons, we reject Harleysville's assertion that Navigant was an intended third-party beneficiary of the contract between Fox and Mohr merely because Navigant owned the property at the time the contract was formed and executed. Additionally, the affidavit submitted by Fox clearly stated that Fox had no relationship with Old Town, let alone Navigant. The e-mails and invoice forming Fox's contract with Mohr did not mention Navigant. Furthermore, we reiterate that Old Town, rather than Navigant, was to be the user of the renovated property. Accordingly, the circuit court properly dismissed the breach of contract claim against Fox.[5]

¶ 43                              iii. Bramco's Contract

¶ 44    We also reject Harleysville's assertion that Navigant was an intended third-party beneficiary of the contract between Bramco and Bottleneck. The "Standard Form of Agreement Between Owner and Contractor" identified Bottleneck as the owner and required "the owner" to furnish information to the contractor. Additionally, the contract identified the Pour House as the project location and set forth the property's address. The contract did not mention Navigant or otherwise refer to the owner of the property. Thus, this unambiguous contract did not come anywhere close to an express declaration of intent, by either Bramco or Bottleneck, to make Navigant a third-party beneficiary.

---

[5]We reject Harleysville's contention that we must reinstate this count because Fox Valley has not filed an appellee brief in this appeal. Because the issues are simple, we can easily decide this matter without the assistance of Fox's appellee's brief. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 45    Harleysville nonetheless states that "Bramco expressly incorporated a term in its contract for the benefit of Navigant, by requiring its subcontractors to name Navigant as an additional insured on the insurance policies obtained in relation to the work at the subject policy." Rather than citing any particular contractual provision in support of the statement, Harleysville cites its own motion to reconsider. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (requiring argument to be supported by citations to the pages of the record relied on). In any event, the contract between Bramco and Bottleneck required only that Bramco maintain insurance: it did not require Bramco to ensure that its subcontractors name Navigant as an additional insured. To the extent that Harleysville refers to Bramco's agreements with its subcontractors, rather than the agreement between Bramco and Bottleneck, Harleysville has not alleged that Bramco or its subcontractors breached those agreements. Furthermore, Harleysville's opening brief did not explain how the subcontracts are relevant to determining Bramco's intent as to its contract with Bottleneck.

¶ 46    In its reply brief, Harleysville, states that "Bramco expressly incorporated its contracts with its subcontractors into its contract with Bottleneck." Yet, Harleysville cites Bramco's subcontract with Ameriscan Designs, Inc., not its contract with Bottleneck, once again failing to support its contention with a citation to the record. Harleysville has also failed to develop this into a cohesive argument explaining how this would render Navigant an intended beneficiary of Bramco's contract with Bottleneck. See also *Midwest Concrete Products Co.*, 94 Ill. App. 3d at 398 (finding that while the subcontract stated it was " 'subject to' " the terms of the general contract entered into with the entity that occupied and used the property, that entity was not a third-party beneficiary of the subcontract). Furthermore, a promise to obtain insurance reflects an intent to protect the contracting parties from liability, not necessarily an intent to confer a benefit upon the additional insured. See *Estate of Willis*, 357 Ill. App. 3d at 1009-10 (finding the

claimant was not a third-party beneficiary where no contractual language granted the claimant the right to enforce the subcontracts at issue, notwithstanding that the claimant was named as the general contractor in the insurance rider).

¶ 47    Harleysville further cites the following language found in Bramco's subcontracts:

> "Subcontractor agrees and acknowledges that *Owner* is an intended third party beneficiary of this Subcontract. Subcontractor further agrees and acknowledges that it shall have no recourse against *Owner* for any default by Contractor under this Subcontract other than under applicable mechanics lien law." (Emphases added.)

Harleysville ignores, however, that the subcontracts clearly identify Bottleneck, rather than Navigant, as owner.

¶ 48    Finally, even if it were appropriate to examine evidence outside of Bramco's unambiguous contract, we reject Harleysville's assertion that it was an intended third-party beneficiary of the contract because Bottleneck's lease required it to obtain approval from Navigant for alternations. At best, it shows an intent to abstain from harming Navigant or to limit Bottleneck's own liability to Navigant. The circuit court properly dismissed this claim.

¶ 49                                  iv. CTI's Contract

¶ 50    We are also unpersuaded by Harleysville's assertion that Navigant was an intended third-party beneficiary to the contract between CTI and Old Town. The contract did not mention Navigant or the owner of the property. While the contract refers to Tomaska, it clearly identifies him as a representative of Old Town, not Navigant. Assuming CTI knew that Navigant owned the property at the time the contract was formed and executed, we reiterate that this alone falls short of showing anything near an express intent to make Navigant a third-party beneficiary of the contract. The circuit court properly dismissed this breach of contract claim as well.

¶ 51                                    v. Arch-H's Contract

¶ 52    Harleysville further failed to show that Navigant was an intended third-party beneficiary of the agreement between Arch-H and Bottleneck. The agreement did not refer to Navigant. The agreement identified Bottleneck as "the Owner" and did not otherwise refer to the owner of the property. Additionally, the agreement did not purport to confer any rights upon Navigant or provide a means for it to enforce any rights. See *155 Harbor Drive Condominium Ass'n*, 209 Ill. App. 3d at 648. Furthermore, Bottleneck, rather than Navigant, was the recipient of Arch-H's performance.

¶ 53    Moreover, section 10.5 of the agreement explicitly and unambiguously stated that "Nothing contained in the Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Owner or Architect." See *Barry v. St. Mary's Hospital Decatur*, 2016 IL App (4th) 150961, ¶¶ 83-84 (finding the plaintiff was not a third-party beneficiary where the contract explicitly named one third-party beneficiary and disavowed the parties' liability to any other third parties); *Ball Corp.*, 187 Ill. App. 3d at 178 (finding no third-party beneficiary was intended where the contract stated that " '[n]othing contained in the contract documents shall create any contractual relation between any subcontractor and the Owner' "). In light of this provision, we find Harleysville's position to be disingenuous.

¶ 54    Finally, Arch-H's contract with Bottleneck did not incorporate Bottleneck's lease with Navigant. Thus, the lease, which required Bottleneck to submit proposed alterations to Navigant or Tomaska for review and approval, has no bearing on this issue. The circuit court properly dismissed this claim.

¶ 55                                   vi. Advance's Contract

¶ 56    We further reject Harleysville's contention that a genuine issue of material fact exists as to whether Navigant was an intended third-party beneficiary of Advance's contract with Bottleneck, precluding summary judgment. Contrary to Harleysville's assertion, the record does not show that Advance had a contract with Bottleneck. Rather, Advance was a subcontractor of Arch-H. To the extent Harleysville believes that Navigant was an intended third-party beneficiary of that contract, Harleysville's contention is forfeited, as its opening brief did not make this argument. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018).

¶ 57    Forfeiture aside, the argument is meritless. The e-mails comprising Advance's contract with Arch-H did not mention Navigant. We reiterate that even if Advance knew Navigant owned the property, this alone was insufficient to overcome the presumption that Navigant was not an intended third-party beneficiary of the contract. Accordingly, the circuit court properly entered summary judgment in Advance's favor.

¶ 58                              B. The Economic Loss Doctrine

¶ 59    Next, we find the circuit court properly ruled in favor of defendants with respect to Harleysville's negligence claims.

¶ 60    The economic loss doctrine denies a tort remedy for those whose complaint is rooted in the disappointment of commercial or contractual expectations. *Sienna Court Condominium Ass'n v. Champion Aluminum Corp.*, 2018 IL 122022, ¶ 21. Under that doctrine, a plaintiff cannot recover in tort for solely economic loss. *Id.* Economic losses are damages for inadequate value, the cost of repairing or replacing a defective product, or resulting lost profits, excluding any claim for personal injury or damage to other property. *Scott & Fetzer Co. v. Montgomery Ward & Co.*, 112 Ill. 2d 378, 387 (1986). The doctrine also extends defective services. *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 160 (1994).

¶ 61    Much has been said with respect to the policies behind the economic loss doctrine. The doctrine recognizes that the economic losses of one event are virtually limitless and "avoids the consequences of open-ended tort liability." *In re Chicago Flood Litigation*, 176 Ill. 2d at 198. A qualitative defect and harm relating to a consumer's expectations as to a product's quality and fitness for ordinary use is addressed by contract law. *Scott & Fetzer Co.*, 112 Ill. 2d at 387-88. Additionally, a service provider and their client have an important interest in defining the terms of its relationship before finalizing an agreement. *Congregation of the Passion, Holy Cross Province*, 159 Ill. 2d at 161. As our supreme court has recognized, subcontractors depend on their contacts with general contractors to define their risks and liability exposure, which in turn impacts the fees they set in their contracts. *Sienna Court Condominium Ass'n*, 2018 IL 122022, ¶ 24. Furthermore, the doctrine applies even where the plaintiff is unable to recover in contract. *Congregation of the Passion, Holy Cross Province*, 159 Ill. 2d at 160-61; *Anderson Electric, Inc. v. Ledbetter Erection Corp.*, 115 Ill. 2d 146, 150, 153 (1986); see also *Sienna Court Condominium Ass'n*, 2018 IL 122022, ¶ 21 (stating that an action for economic loss generally requires the plaintiff and the defendant to be in contractual privity).

¶ 62    The economic loss doctrine also seeks to define the contours of duty. *2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 136 Ill. 2d 302, 315 (1990). Specifically, recovery in tort for purely economic loss is precluded where a service provider's duties are defined by contract. *Sienna Court Condominium Ass'n*, 2018 IL 122022, ¶ 24. Conversely, the doctrine does not bar recovery in tort where a defendant breaches a duty that existed independently of a contract. *Congregation of the Passion, Holy Cross Province*, 159 Ill. 2d at 164. Yet, courts have frequently applied the economic loss rule in construction cases. *Sienna Court Condominium Ass'n*, 2018 IL 122022, ¶ 21; see, *e.g.*, *2314 Lincoln Park West*

*Condominium Ass'n*, 136 Ill. 2d at 316-17 (finding "the plaintiff's theory that the defendant architectural firm was negligent in its design of the structure" concerned the quality, rather than the safety, of the building and consequently was more appropriately resolved through contract law); *Fireman's Fund Insurance Co.*, 176 Ill. 2d at 161 (holding that the economic loss doctrine prohibits a tort action against an engineer for purely economic losses). Latent construction defects that cause solely economic damages are not properly raised in a negligence claim. *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 156 (1983).

¶ 63    Here, Harleysville's negligence claims, as alleged in the amended complaint, were clearly based on commercial expectations. Those claims expressly relied on the duties defined by defendants' contracts. Additionally, Navigant and Harleysville were disappointed that defendants' work did not live up to commercial expectations, notwithstanding that Navigant was a stranger to the contracts. Furthermore, Harleysville sought damages for repairs to trusses that were subject to the contracts as well as lost rent. These damages are the epitome of economic loss. Moreover, we note that just as defendants defined their liabilities and rights through contract, Navigant had the same ability with respect to its lease agreements. Navigant could have negotiated for a term requiring its tenants to ensure that Navigant had express contractual rights in any renovation contracts they might enter into. Thus, we find that the economic loss doctrine barred Harleysville's claims.

¶ 64    Harleysville has wisely abandoned its reliance on the sudden and calamitous occurrence exception to the economic loss doctrine. See also *Hecktman v. Pacific Indemnity Co.*, 2016 IL App (1st) 151459, ¶ 18 (finding that the plaintiffs failed to allege a sudden, dangerous, or calamitous event and that their complaint instead alleged that their floors displayed damage over a period of time). Yet, Harleysville maintains that the damages sought cannot reflect

disappointed commercial expectations because Navigant did not directly negotiate with defendants. Once again, Harleysville's inability to succeed in contract does not preclude application of the doctrine. See *Congregation of the Passion, Holy Cross Province*, 159 Ill. 2d at 160-61; *Anderson Electric, Inc.*, 115 Ill. 2d at 150, 153. But see *Ferentchak v. Village of Frankfort*, 121 Ill. App. 3d 599, 606 (1984) (stating that the economic loss doctrine applies where the plaintiff's injuries directly relate to reasonable commercial expectations *and* the plaintiff has an adequate contract action against the defendant), *rev'd in part on other grounds*, 105 Ill. 2d 474 (1985); *Scott & Fetzer Co. v. Montgomery Ward & Co.*, 129 Ill. App. 3d 1011, 1017 (1984) (finding that the doctrine did not bar the warehouse tenants' recovery for fire damage because there were no commercial dealings between those tenants and the defendant who installed the fire alarm system in the space adjacent to them), *aff'd on other grounds by* 112 Ill. 2d at 388 (finding the economic loss doctrine did not apply because the plaintiff's sought damages for the loss of property other than the defective product and the loss resulted from a sudden and dangerous event). Moreover, Navigant's lack of negotiation with these defendants demonstrates why the rule *should* apply.

¶ 65    These defendants negotiated with Navigant's tenants, or each other, to define their rights and duties under their respective contracts. These negotiations informed defendants' assessment of liability and their fees. Because Navigant has suffered only economic loss, it would be inappropriate to subject defendants to liability beyond the terms of their contracts. Had someone been hurt in this case, or had Navigant sustained other property damage, the same could not be said. We take the case as we find it, however. See also *2314 Lincoln Park West Condominium Ass'n*, 136 Ill. 2d at 317 (stating that "if the purchaser buys goods which turn out to be below its

- 21 -

expectations, its remedy should be against the person from whom it bought the goods, based upon the contract with that person").

¶ 66    Harleysville's opening brief further represents that defendants had a duty to Navigant independent of defendants' contracts because Navigant owned the property where defendants performed their work. That brief fails to explain how the status of one party created a relationship between two or why such relationship would create an independent duty in tort.

¶ 67    In its reply brief, Harleysville argues that defendants entered into a voluntary undertaking, thereby creating a duty per section 324A of the Restatement (Second) of Torts (Restatement (Second) of Torts § 324A (1965)). This contention is entirely forfeited. None of Harleysville's prior pleadings in the circuit court or this court raised duty based on a voluntary undertaking. Moreover, section 324A does not apply to these facts:

> "One who undertakes, gratuitously or for consideration, to render services to another *which he should recognize as necessary for the protection of a third person or his things*, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> > (a) his failure to exercise reasonable care increases the risk of such harm, or
> >
> > (b) he has undertaken to perform a duty owed by the other to the third person, or
> >
> > (c) the harm is suffered because of reliance of the other or the third person upon
>
> the undertaking." (Emphasis added.) Restatement (Second) of Torts § 324A (1965).

¶ 68    Here, defendants had no reason to know that their services were "necessary for the protection of a third person or his things." This is because defendants entered into contracts to renovate a restaurant and their services were not necessary to protect anyone or anything. *See.*

*Scott & Fetzer Co.*, 112 Ill. 2d at 388 (finding the economic loss doctrine did not apply where the defendant supplied a defective fire alarm system).

¶ 69    Having determined that the economic loss doctrine barred Harleysville's negligence claims, we find that the circuit court properly entered judgment in favor of defendants.

¶ 70                                III. Conclusion

¶ 71    Navigant was not an intended third-party beneficiary of defendants' contracts. It follows that the circuit court properly entered judgment in defendants' favor on Harleysville's breach of contract claims. Additionally, the economic loss doctrine precluded Harleysville's negligence claims seeking the recovery of purely economic loss. In light of our determination, we need not consider the parties' remaining contentions.

¶ 72    For the foregoing reasons, we affirm the circuit court's judgment.

¶ 73    Affirmed.

---

**No. 1-19-2427**

---

| | |
|---|---|
| **Cite as:** | *Harleysville Insurance Co. v. Mohr Architecture, Inc.*, 2021 IL App (1st) 192427 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2018-L-008623; the Hon. Margaret A. Brennan, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Stuart M. Brody and Bradley M. Hamblock, of Thompson Brody & Kaplan, LLP, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Thomas G. Cronin and Brian H. Myers, of Gordon Rees Scully Mansukhani, LLP, of Chicago, for appellee Mohr Architecture, Inc. |
| | Omar Odland and Christopher Zann, of Cincinnati Insurance Company Staff Defense, of Chicago, for appellee Bramco Construction Company. |
| | Hillary L. Weigle and Ellen L. Green, of SmithAmundsen LLC, of Chicago, for appellee Campbell Truss, Inc. |
| | Newton C. Marshall, Douglas R. Garmager, and Michelle M. Blum, of Karbal, Cohen, Economou, Silk & Dunne, LLC, of Chicago, for appellee Arch-H, LLC. |
| | Thomas B. Orlando, Douglas J. Palandech, and Joel B. Daniel, of Foran Glennon Palandech Ponzi & Rudloff PC, of Chicago, for appellee Advance Consulting Group International. |
| | No brief filed for other appellee. |

---