2022 IL App (1st) 201374

No. 1-20-1374

Filed June 9, 2022

Fourth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| FLORENCE CORCORAN, as Successor Trustee of the Second Amended Filip Rotheimer Revocable Trust Dated September 12, 2012; SUNNYSIDE CHICAGO APARTMENTS, LLC, an Illinois Limited Liability Company, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 2015 CH 17688 |
| PHILIP ROTHEIMER, KRIEMHILDE SILVIA VINCE, and CHICAGO TITLE LAND TRUST COMPANY, as Trustee of Trust No. 5903, | ) ) ) ) | |
| Defendants, | ) ) | Honorable Pamela M. Meyerson, |
| (Kriemhilde Silvia Vince, Defendant-Appellant). | ) | Judge Presiding. |

JUSTICE MARTIN delivered the judgment of the court, with opinion.
Justices Lampkin and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1    A dispute between their children is something no parent wishes. Philip Rotheimer (Philip),

Kriemhilde Silvia Vince (Silvia), and Florence Corcoran (Florence) are siblings and the adult

children of Filip Rotheimer (Filip). Filip died September 13, 2015, age 94.

¶ 2    During his lifetime, Filip acquired various parcels of real estate. This dispute between

siblings concerns their competing claims to proceeds from the sale of one of those parcels. To resolve this dispute, we must determine if the circuit court properly found that Filip's assignment of his beneficial interest in a land trust was effective.

¶ 3                              I. BACKGROUND

¶ 4    In 1962, Filip purchased a multi-unit building located at 4751-59 North Sheridan Road in Chicago (the Sheridan Property). Filip created a land trust dated October 18, 1962, with Oak Park National Bank as trustee, and deeded the Sheridan Property into the trust. Filip retained the beneficial interest in the land trust, which was designated Land Trust 5903. The land trust changed trustees several times, eventually being transferred to Chicago Title Land Trust Company (Chicago Title), which acted as trustee until the Sheridan Property was sold in June 2018.

¶ 5    The land trust agreement provided that, in the event of Filip's death, Philip and Silvia would become joint tenants with rights of survivorship. The agreement further provided that no assignment of the beneficial interest in the land trust would be binding on the trustee until it was "lodged" with the trustee:

> "No assignment of any beneficial interest hereunder shall be binding on the trustee until the original or a duplicate of the assignment is lodged with the trustee, and every assignment of any beneficial interest hereunder, the original or duplicate of which shall have not been lodged with the trustee, shall be void as to all subsequent assignees or purchasers without notice."

¶ 6    On January 22, 1998, Filip established the Filip Rotheimer Revocable Trust (Revocable Trust). Filip named himself as the grantor and trustee and named Silvia, Philip, and Florence as his beneficiaries. Florence was also designated as successor trustee.

¶ 7    In July 2005, Filip amended the survivorship provisions of the land trust to provide that in

2

the event of his death, his beneficial interest would pass to Silvia and Philip as tenants in common. The amended survivorship provisions further provided that during his lifetime, Filip could "sell, assign, transfer, pledge, or otherwise dispose of all or any part" of his beneficial interest in the land trust.

¶ 8    On October 4, 2006, Filip formed a limited liability company, Sunnyside Chicago Apartments, LLC (Sunnyside LLC). The sole member of Sunnyside LLC was the Revocable Trust. This trust was amended on two occasions, with the last amendment occurring on September 12, 2012.

¶ 9    In October 2006, Filip obtained a loan from Washington Mutual Bank for $1.47 million, secured by a note and mortgage on the Sheridan Property. In connection with the loan, Filip directed the land trustee to execute a document titled "Irrevocable Right to Approve Trust Document" (Irrevocable Right to Approve). This document gave Washington Mutual Bank, as lender, the right to approve the land trustee's execution of any instruments relating to or concerning the trust agreement and Sheridan Property, providing in relevant part:

> "*Right To Approve*. Beneficiary hereby grants to Lender the right to approve the execution by the Land Trustee of any and all instruments which relate to or concern the Trust Agreement or the Property, including, without limitation, the following: ***
>
> (f) assignments, security agreements or pledges of beneficial interest under the Trust Agreement; (g) all contracts purporting to affect or relate to the Trust Agreement or the Property; (h) all documents to be filed or recorded in public records; (i) letters, notices, contracts, documents, or any written instruments; ***
>
> Beneficiary agrees that it will not seek or obtain the execution by Land Trustee of

any of the above-described instruments without Lender's prior written approval. The exercise of Lender's aforesaid right to approve must be evidenced in writing by a consent in form satisfactory to the Land Trustee or by a written consent to any applicable letter of direction to the Land Trustee, which consents are to be executed by an officer of Lender. Lender agrees to approve the execution of any such instrument which is expressly permitted under the Loan Documents to be executed by the Land Trustee." (Emphasis in original.)

¶ 10     In December 2006, Filip directed his attorney, Mark Glickman, to prepare a document assigning his beneficial interest in the land trust to Sunnyside LLC. Glickman, following Filip's wishes, drafted a short document, which Filip signed, that purported to assign Filip's beneficial interest to Sunnyside LLC. This document was not lodged with land trustee Oak Park National Bank.

¶ 11     By 2011, North Star Trust Company (North Star Trust) had become the successor land trustee to Oak Park National Bank, and KeyBank Real Estate Capital (KeyBank) had become the successor lender to Washington Mutual Bank. North Star Trust advised Filip that there were issues with his 2006 assignment, as it had not been lodged with then land trustee Oak Park National Bank. In response, Filip prepared a new assignment document using North Star Trust's assignment form. North Star Trust advised Filip that KeyBank likely would not consent to the assignment being lodged unless an assignment fee of $10,000 was paid.

¶ 12     Filip refused to pay the fee, and, as North Star Trust predicted, KeyBank refused to waive the fee. Unable to obtain a consent to the assignment from KeyBank, attorney Glickman prepared another assignment of beneficial interest document for Filip's signature, which Filip signed and dated September 14, 2011. This document too was never lodged with land trustee North Star Trust.

4

¶ 13    By the time of Filip's death in September 2015, Chicago Title had become the successor land trustee. At no time since the creation of the land trust did Filip lodge an assignment of his beneficial interest with any of the various trustees. The Sheridan Property was sold in June 2018, satisfying the mortgage obligation on the property.

¶ 14    A dispute between the siblings arose over who was entitled to the Sheridan Property and ultimately its proceeds. Florence claimed that Filip's beneficial interest in the land trust had been successfully transferred to Sunnyside LLC through his purported assignments. Florence contended that Filip's rights were now hers, by virtue of her status as successor trustee of Filip's second amended Revocable Trust.

¶ 15    Silvia and Philip claimed a right to the Sheridan Property, and thus the proceeds from its sale, because of their status as holders of Filip's beneficial interest in the land trust, inasmuch as his interest passed to them because of the trust survivorship provisions. Silvia and Philip contended that Filip's attempts at assigning his beneficial interest in the land trust to Sunnyside LLC were ineffective because of Filip's failure to lodge the assignment documents with any of the various land trustees. They also claimed that the assignments were ineffective because of language contained in the Irrevocable Right to Approve, which they interpreted as prohibiting a change in the status of the land trust beneficial interest without the lender's approval. Filip failed to obtain such approval; consequently, Silvia and Philip contend that this failure rendered the assignments invalid.

¶ 16    In 2015, Florence filed a declaratory action in the circuit court of Cook County, requesting the court find that Filip successfully assigned his beneficial interest in the land trust to Sunnyside LLC. During the litigation, the parties filed cross-motions for summary judgment. The court found in favor of Florence, granting her judgment, and denied relief to Silvia.

¶ 17　In reaching its judgment, the circuit court found that "the term in the land trust relating to lodging an assignment does not determine whether or not an assignment of beneficial interest is effective as between the parties." The court concluded that Filip's assignment of his beneficial interest was effective, despite the requirement that the assignment be lodged with the trustee.

¶ 18　The circuit court next determined that language in the Irrevocable Right to Approve did not preclude giving effect to Filip's assignment of his beneficial interest. The court held that the Irrevocable Right to Approve concerned the lender's right to approve execution of certain documents by the land trustee, not documents executed by Filip. In other words, the lender retained the authority to approve or disapprove documents executed by the land trustee, not those executed by Filip. Therefore, the Irrevocable Right to Approve did not require the lender to approve the assignment for it to be effective.

¶ 19　On December 10, 2020, the circuit court entered an order finding that Sunnyside LLC was entitled to the $1,783,053.47 proceeds from the sale of the Sheridan Property. The sale proceeds had previously been deposited, pursuant to court order in a separate probate action, with the clerk of court. Silvia appealed to this court.

¶ 20　The circuit court subsequently granted Silvia's request to stay enforcement of its order pending appeal.

¶ 21　　　　　　　　　　　　　II. ANALYSIS

¶ 22　On appeal, we are asked to resolve the following two issues: (1) whether Filip's assignment of his beneficial interest in Land Trust 5903 to Sunnyside LLC was effective, despite not being lodged with the land trustee, and (2) whether Filip was required to obtain the lender's approval before transferring his beneficial interest.

¶ 23　In this case, the parties filed cross-motions for summary judgment. Our court reviews a

circuit court's ruling on cross-motions for summary judgment and the construction of trust language under a *de novo* standard of review. *Schroeder v. Sullivan*, 2018 IL App (1st) 163210, ¶ 25.

¶ 24 When parties file cross-motions for summary judgment, they agree that there are only questions of law to decide, and they invite the court to decide the issues based upon the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28; *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 308-09 (2010). Summary judgment should be granted if the pleadings, depositions, admissions on file, and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010); *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 25 In construing the language of a trust, courts utilize the same rules of construction as those used for interpreting wills and other contracts. *In re Estate of Mendelson*, 298 Ill. App. 3d 1, 3 (1998). Our primary objective in construing language in a trust is to ascertain and give effect to the intent of the settlor, provided that intent does not conflict with the law or public policy of the state. *Chicago Police Sergeants' Ass'n v. Pallohusky*, 2019 IL App (1st) 181194, ¶ 19; *In re Estate of Lee*, 2017 IL App (3d) 150651, ¶ 32. We determine the settlor's intent by examining the language of the trust itself. If there is no ambiguity, we construe the language according to its plain and ordinary meaning. *Schroeder*, 2018 IL App (1st) 163210, ¶¶ 26-27; *In re Estate of Lee*, 2017 IL App (3d) 150651, ¶ 32. Intent is found by analyzing the specific words used in conjunction with the circumstances under which they were drafted, including the state of the testator's property and family circumstances. *Northern Trust Co. v. Knox*, 373 Ill. App. 3d 479, 487 (2007). Moreover, when two or more instruments create, define, or relate to a trust, they should be construed together to effectuate the intent of the settlor. *Harris Trust & Savings Bank v. Donovan*, 145 Ill. 2d 166,

7

176 (1991).

¶ 26                    A. Lodging Assignment with Trustee

¶ 27    Silvia argues that the circuit court erred by failing to give effect to language in the land trust documents providing that no assignment of Filip's beneficial interest in the land trust would be effective unless and until it was "lodged" with the land trustee. Silvia contends that since Filip's assignments were never lodged with the land trustee, the circuit court was required to enforce the terms of the land trust, thus making her and Philip the owners of the beneficial interest.

¶ 28    "A trust 'is a fiduciary relationship with respect to property, arising from a manifestation of intention to create that relationship and subjecting the person who holds title to the property to duties to deal with it for the benefit of *** one or more persons, at least one of whom is not the sole trustee.' " *Pallohusky*, 2019 IL App (1st) 181194, ¶ 20 (quoting Restatement (Third) of Trusts § 2 (2003)). "Every trust must have a settlor, a corpus, a trustee, and a beneficiary." *National City Bank of Michigan/Illinois v. Northern Illinois University*, 353 Ill. App. 3d 282, 289 (2004).

¶ 29    Unlike a conventional trust, where the trustee holds legal title to the property, and the beneficiary holds equitable title—in an Illinois land trust, the trustee holds both the legal and equitable title to the property. *Campbell v. Campbell*, 2017 IL App (3d) 160619, ¶ 17. In an Illinois land trust arrangement,

> "the real estate owner creates a trust into which real property is conveyed, becomes the trust beneficiary, and owns only a beneficial interest in the trust res. The legal title to the real estate is held by the land trustee, such as a bank or other financial institution. This results in the equitable conversion of the owner's interest in the real estate from a real property interest to a personal property interest." *In re McGuane*, 305 B.R. 695, 699 n.1 (Bankr. N.D. Ill. 2004).

"[T]he beneficiary's interest in the real property changes to a personal property interest in the trust." *Financial Freedom Acquisition, LLC v. Standard Bank & Trust Co.*, 2015 IL 117950, ¶ 33.

¶ 30    As a result, "[a] beneficiary cannot transfer legal title to property held in trust because the beneficiary does not hold that interest; only the trustee holds that interest." *Campbell*, 2017 IL App (3d) 160619, ¶ 20. Accordingly, only the trustee may convey title to the property. *Alward v. Jacob Holding of Ontario LLC*, 2019 IL App (5th) 180332, ¶ 18. However, the settlor of a land trust can convey their beneficial interest in the trust. *In re Estate of Agin*, 2016 IL App (1st) 152362, ¶ 26. "Under the governing Illinois law of land trusts, an assignment of the beneficial interest in a land trust is personal, not real property." *In re Loop Hospital Partnership*, 50 B.R. 565, 568 (Bankr. N.D. Ill. 1985).

¶ 31    "[T]he owner of the beneficial interest is empowered to transfer his or her beneficial interest through an assignment." *Wagemann Oil Co. v. Marathon Oil Co.*, 306 Ill. App. 3d 562, 567 (1999); see also *Patrick v. Village Management*, 129 Ill. App. 3d 936, 939 (1984) (owner of a beneficial interest is "empowered to transfer all or any number of the incidents of his beneficial interest through an assignment"); *Wachta v. First Federal Savings & Loan Ass'n of Waukegan*, 103 Ill. App. 3d 174, 177 (1981) (same). "An assignment occurs when there is a transfer of some identifiable interest from the assignor to the assignee." *Stoller v. Exchange National Bank of Chicago*, 199 Ill. App. 3d 674, 681 (1990).

¶ 32    The bankruptcy court in *Federal Deposit Insurance Corp. v. Wooten*, 80 B.R. 917, 920-21 (Bankr. N.D. Ill. 1987), in interpreting Illinois law, determined that the failure to lodge an assignment with the land trustee does not render the assignment invalid as between the assignor and assignee; rather, such failure may render the assignment void as to subsequent mortgagees, assignees, or purchasers without notice.

¶ 33    We agree with the rationale of the bankruptcy court in *Wooten* and adopt it here. In this case, the lodging provision in the land trust agreement provides that:

> "No assignment of any beneficial interest hereunder *shall be binding on the trustee* until the original or a duplicate of the assignment *is lodged with the trustee*, and every assignment of any beneficial interest hereunder, the original or duplicate of *which shall have not been lodged with the trustee, shall be void as to all subsequent assignees or purchasers without notice*." (Emphases added.)

¶ 34    Thus, under the trust's plain language, the failure to lodge an assignment with the land trustee does not invalidate the assignment, but instead voids it as to subsequent assignees or purchasers without notice. Silvia and Philip are neither subsequent assignees nor purchasers without notice; therefore, they cannot rely on the fact that the assignment was not lodged with the land trustee, to avoid its effect.

¶ 35    A close reading of the language in the lodging provision regarding "binding" the trustee shows that the lodging requirement is designed to protect trustees against potential accusations of breach of fiduciary duty, in situations where the trustee must determine which assignment is entitled to priority. Such issues are not present in this case; therefore, Filip's failure to lodge his assignments with the land trustee did not render the assignments invalid.

¶ 36    The two cases that Silvia cites in support of her position—*Larkin v. Bank of Ravenswood*, 91 Ill. App. 3d 803 (1980), and *St. Charles Savings & Loan Ass'n v. Estate of Sundberg*, 150 Ill. App. 3d 100 (1986)—are factually distinguishable. Therefore, this case warrants a different result.

¶ 37    In *Larkin*, the circuit court held that the lender bank could not hold the land-trustee bank liable for breach of fiduciary duty for failing to discover a forged signature on an assignment. *Larkin*, 91 Ill. App. 3d at 805-06. The trust agreement in *Larkin* provided that any assignment of

a beneficial interest is not binding on the land-trustee bank until it is lodged with and accepted by the land-trustee bank. *Id.* at 805. The *Larkin* court found that the lender bank had not acquired the status of a beneficiary under the trust at the time the land-trustee bank accepted the forged assignment; therefore, the land-trustee bank did not owe a fiduciary duty to the lender bank. *Id.* at 805-06.

¶ 38 The facts in this case are distinguishable from those in *Larkin*. Florence did not seek a court finding that Filip's assignment was binding on the land trustee. Rather, she sought a finding that Filip's assignment was effective as to Silvia and Philip. *Larkin* is further distinguishable in that the circuit court was not asked to find that the operative language "shall be void as to all subsequent assignees or purchasers without notice," as found in the land trust agreement at issue in this case.

¶ 39 In *Sundberg*, the circuit court examined, among other issues, whether a secured party was required to lodge an assignment of beneficial interest with the trustee in order to perfect its security interest. *Sundberg*, 150 Ill. App. 3d at 105-08. The Small Business Administration (SBA) guaranteed a loan made by the Aurora National Bank (Lender Bank) to K & E Industries, Inc. (K & E Industries). *Id.* at 102. The loan was personally guaranteed by Mr. Sundberg, who was president of K & E Industries. Mr. Sundberg assigned to the Lender Bank, as collateral, his beneficial interest in a land trust, which held title to the subject property. The land trustee was Chicago Title & Trust Company (Trustee). The property was encumbered by a first mortgage held by St. Charles Savings & Loan Association (St. Charles). *Id.*

¶ 40 K & E Industries eventually defaulted on the note, and the SBA reimbursed the Lender Bank pursuant to its guarantee. *Id.* The Lender Bank then assigned the note to the SBA but failed to assign the beneficial interest in the land trust. *Id.* The SBA eventually received an assignment of the beneficial interest in the land trust from the Lender Bank, but this occurred after Mr.

11

Sundberg died and St. Charles foreclosed on the mortgage. *Id.* at 103. When Mr. Sundberg died, the beneficial interest passed to his sister, the successor beneficiary under the original trust, who in turn assigned the beneficial interest to Mr. Sundberg's widow. *Id.*

¶ 41    The circuit court determined that the proceeds from the foreclosure sale belonged to the widow and not to the SBA, since no assignment of the beneficial interest in the land trust to the SBA had been lodged with the trustee prior to Mr. Sundberg's death. *Id.* at 107-08. The court held that the SBA failed to perfect its security interest in the land trust under the applicable provisions of article 9 of the Uniform Commercial Code (Ill. Rev. Stat. 1983, ch. 26, ¶ 9-101 *et seq.*). *Sundberg*, 150 Ill. App. 3d at 105-08. Unlike *Sundberg*, this case does not involve the issue of delayed perfection of a security interest and is therefore factually distinguishable.

¶ 42                    B. Approval of Assignment by Lender

¶ 43    Silvia next contends that the circuit court erred by giving effect to Filip's assignments of his beneficial interest to Sunnyside LLC, as the assignments were not approved by mortgage lender KeyBank. Silvia's argument implicitly assumes that the assignments are encompassed by the Irrevocable Right to Approve. However, her argument misinterprets language contained in the document.

¶ 44    The Irrevocable Right to Approve provides, in relevant part, that the "[b]eneficiary hereby grants to Lender the right to approve the execution by the Land Trustee of any and all instruments which relate to or concern the Trust Agreement or the Property." The document further provides, in relevant part, that the "[b]eneficiary agrees that it will not seek or obtain the execution by Land Trustee of any of the above-described instruments without Lender's prior written approval." According to this plain language, even if Filip had lodged the assignments with the land trustee, there would have been nothing for the lender to approve, as the trustee was not being asked by

12

Filip to execute any documents.

¶ 45    Like the trial judge, we find that Silvia lacked standing to seek enforcement of the Irrevocable Right to Approve. This document was between the original lender, Washington Mutual Bank, and the land trustee, Oak Park National Bank. The document was executed to protect Washington Mutual Bank's security interests in the Sheridan Property. Neither Silvia nor Philip were (1) parties to the document, (2) intended beneficiaries of the document, or (3) third-party beneficiaries of the document—as required to have standing to enforce the document.

¶ 46    "Third parties have rights under a contract only if they are intended beneficiaries; that is, the contracting parties must have intended to directly benefit the third parties by the performance of the contract." *Doyle v. Village of Tinley Park*, 2018 IL App (1st) 170357, ¶ 33. "[I]ncidental beneficiaries have no contractual rights or standing to enforce a contract's terms." *Harleysville Insurance Co. v. Mohr Architecture, Inc.*, 2021 IL App (1st) 192427, ¶ 31.

¶ 47    Silvia contends that as a contingent beneficiary of the land trust, she had standing to insist on compliance with the terms of the trust. However, as the trial judge observed in ruling on the cross-motions for summary judgment, "[t]here's no indication that in entering into the irrevocable right to approve, the parties had any intention to protect the rights of contingent owners of beneficial interest."

¶ 48                                III. CONCLUSION

¶ 49    We affirm the circuit court's ruling granting summary judgment in favor of plaintiffs on their claim for declaratory judgment. We also affirm the court's denial of defendant's motion for summary judgment. We find that, under the particular facts of this case, Filip's assignment was effective as to defendants, despite trust language requiring that the assignment be lodged with the land trustee. We also conclude that the Irrevocable Right to Approve did not require the lender to

13

approve Filip's assignment of his beneficial interest in Land Trust 5903 to Sunnyside LLC. Accordingly, we affirm the circuit court's judgments and remand with directions that the court dissolve its order staying enforcement of its judgments.

¶ 50    Affirmed and remanded with directions.

2022 IL App (1st) 201374

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2015-CH-17688; the Hon. Pamela M. Meyerson, Judge, presiding. |
| **Attorneys for Appellant:** | Peter M. King, William H. Jones, and Jeffrey M. Mathis, of King & Jones, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Jeffrey Strange and Richard Gilbaugh, of Jeffrey Strange and Associates, of Wilmette, for appellees. |